*466
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The issue in this appeal is whether the Magnuson-Moss Warranty Act (15 USC §§ 2301-2312) applies to plaintiff Mark DiCintio’s automobile lease. We conclude that it does not.
 

 In June 1999, DiCintio leased from Adzam Auto Sales, Inc. a 1999 Jeep Grand Cherokee Laredo sport utility vehicle manufactured by DaimlerChrysler Corporation. The lease recited that Adzam would assign the lease to the “Holder,” Chrysler Financial Company L. L. C., and required DiCintio to insure the vehicle for the Holder’s benefit. The lease prohibited operation of the vehicle outside the United States or Canada
 
 *467
 
 without the Holder’s permission, use as a public or private carrier, and sublease of the vehicle. Title did not pass to DiCintio.
 

 The vehicle came with a DaimlerChrysler “Warranty Information” booklet setting forth “limited warranties” which confer “specific legal rights” in addition to those that arise by operation of law. The Basic Warranty, effective for three years or 36,000 miles, covers the cost of all parts and labor necessary to repair any defective item on the vehicle except the tires. Additional warranties cover the cost of repairing corrosion to the vehicle and bringing it into compliance with government emission standards. There is no distinction between warranties for buyers and for lessees.
 

 The agreed-upon value or “gross capital cost” of the vehicle was $32,349. DiCintio paid an initial “capitalized cost reduction” of $2,547 — fees, taxes and first monthly payment brought his initial outlay to $4,179 — and agreed to make monthly payments of $390 for 36 months. Of the $14,039 thus due in monthly payments, $9,736 reflected depreciation, while the lease classified the balance as rent. At the close of the 36-month lease period, having paid some $16,586 plus taxes and fees, DiCintio had the option to purchase the vehicle by paying an additional $20,561. If he returned the vehicle to Adzam before the end of the lease term, he would owe all remaining monthly payments, less the unearned rent charge for the remaining months, plus any excess mileage and excess wear and use charges.
 

 DiCintio was not destined to own the vehicle. Soon after he accepted delivery, by his account, the automatic transmission began to fail to shift gears properly; then the vehicle started to pull to the left while being driven; then it began to “idle rough” and stall while stopped at traffic lights. DiCintio took the vehicle to authorized dealers for repairs on six or seven occasions, but the defects persisted. In October 1999, DiCintio informed Adzam that he wished to terminate the lease or be given another car; Adzam declined. DiCintio then notified Daimler-Chrysler — but not Adzam — that he was revoking acceptance of the vehicle.
 

 When DaimlerChrysler refused this revocation, DiCintio commenced the present action. His first cause of action, seeking damages, alleges breach of written warranty by Daimler-Chrysler under the Warranty Act. Additional causes of action against both DaimlerChrysler and Adzam allege breaches of implied warranties under the Warranty Act and “improper
 
 *468
 
 delivery” under the UCC, and seek revocation of acceptance, costs and attorneys’ fees.
 

 Defendants moved to dismiss the complaint. Holding that the Warranty Act applied to DiCintio’s lease, Supreme Court denied the motion as to his first cause of action but dismissed the breach of implied warranty claims against DaimlerChrysler, the claim for revocation under the Warranty Act and the cause of action for “improper delivery” under the UCC.
 
 [1]
 
 On appeal, the Appellate Division affirmed Supreme Court’s holding that the Warranty Act applied to DiCintio’s lease, but modified Supreme Court’s order by reinstating the breach of implied warranty claims against DaimlerChrysler and the claim for revocation against both defendants. On the motion of Daimler-Chrysler and Adzam, the Appellate Division also certified the appeal for review by this Court. We now reverse.
 

 I.
 

 Enacted in 1975, the Warranty Act was a response to rising complaints “from irate owners of motor vehicles complaining that automobile manufacturers and dealers were not performing in accordance with the warranties on their automobiles”
 
 (Motor Vehicle Mfrs. Assn. of U. S. v Abrams,
 
 899 F2d 1315, 1317 [2d Cir 1990], quoting HR Rep No. 93-1107, 93d Cong, 2d Sess [reprinted in 1974 US Code Cong & Admin News, at 7702, 7708]). “The thrust of the Act is disclosure”
 
 (id.).
 
 The main provision relating to disclosure recites that its purpose is to “improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products * * *” (15 USC § 2302 [a]).
 

 To achieve its aim, the Warranty Act requires that “any warrantor warranting a consumer product to a consumer by means of a written warranty shall * * * disclose in simple and readily understood language the terms and conditions of such warranty” (15 USC § 2302 [a]). The Act does not require manufacturers — or anyone else in the chain of production and distribution — to issue warranties, but if they choose to do so, they must meet the disclosure requirement and other requirements. Thus, the Act provides that “to meet the Federal minimum
 
 *469
 
 standards for warranty” a warrantor “must as a minimum remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty” and that, if the warrantor’s repair attempts do not remedy the defects reasonably promptly, the warrantor must provide a refund or replacement (15 USC § 2304 [a] [1], [4]).
 
 [2]
 

 To enforce its requirements, the Act permits “a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract” to sue warrantors for damages and other relief in any court of competent jurisdiction (15 USC § 2310 [d] [1]). The relief available includes attorneys’ fees (15 USC § 2310 [d] [2]).
 

 As these provisions suggest, operation of the Act depends on construction of a number of defined terms, terms that are critical to this appeal. Specifically, to prevail, a Warranty Act plaintiff first must be a “consumer.” The Act defines “consumer” as
 

 “a
 
 buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)” (15 USC § 2301 [3]).
 
 [3]
 

 A plaintiff who meets any of three alternative tests is thus a “consumer” entitled to sue under the Act. The first of these tests (“a buyer * * * of any consumer product”) directly raises the question whether a sale has occurred. But the remaining two tests raise the same question no less certainly because they require that a written warranty or implied warranty be in
 
 *470
 
 effect, and both terms, in turn, presuppose a “sale.”
 
 [4]
 
 Thus, “written warranty” means
 

 “(A) any written affirmation of fact or written promise made
 
 in connection with the sale
 
 of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
 

 “(B) any undertaking in writing
 
 in connection with the sale
 
 by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,
 

 “which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a
 
 buyer
 
 for purposes other than resale of such product” (15 USC § 2301 [6] [emphasis supplied]).
 

 “Implied warranty” is defined as “an implied warranty arising under State law
 
 * * * in connection with the sale
 
 by a supplier of a consumer product” (15 USC § 2301 [7] [emphasis supplied]).
 

 Thus, each test within the definition of “consumer” requires courts to determine whether a “sale” has occurred. Accordingly, the case hinges on whether DiCintio’s lease qualifies as a “sale.”
 

 II.
 

 The Warranty Act itself contains no definition of “sale” or “buyer.” It was, however, enacted against the backdrop of the UCC — “today’s law of sales”
 
 (see
 
 HR Rep No. 93-1107, reprinted in 1974 US Code Cong & Admin News, at 7706). The UCC definitions of these terms require the “passing of title” for a sale
 
 (see
 
 UCC 2-106 [1]; UCC 2-103 [1] [a]). In contrast, passing of title has never been an attribute of leases, either under UCC article 2-A or under the common law that preceded that
 
 *471
 
 article
 
 (see
 
 UCC 2-A-103 [1] [e], [j];
 
 see e.g. Matter of Exley v Village of Endicott,
 
 51 NY2d 426, 432 [1980]). Because DiCintio never obtained title to the vehicle, its lease to him plainly was not a sale under the UCC. Therefore, DiCintio is not a “consumer” by virtue of being a “buyer,” or by virtue of being either a transferee during the duration of a “written warranty” issued in connection with a sale or any other person entitled to enforce such a “written warranty.”
 

 DiCintio raises several arguments against this application of the plain language of the statute. He contends, first, that his lease closely resembles an installment sale because it gives him the option to purchase the vehicle at the end of the lease term and, until then, the obligation to insure, maintain and service the vehicle. In view of these similarities, as well as the alleged rise in automobile leasing as a path to ownership and the remedial purpose of the Warranty Act, DiCintio maintains that we should treat his lease as a sale. The Appellate Division agreed that DiCintio’s lease is “sufficiently similar to a sale * * * to come within the protective ambit of the Act” (282 AD2d 276, 276, citing
 
 Hornberger v General Motors Corp.,
 
 929 F Supp 884, 887 [ED Pa 1996];
 
 see also Beyer v DaimlerChrysler Corp.,
 
 286 AD2d 103, 109-110 [2d Dept 2001];
 
 Freeman v Hubco Leasing,
 
 253 Ga 698, 703, 324 SE2d 462, 467 [1985]). In fairness to DiCintio, the cases cited by DaimlerChrysler in support of a rigorous sale-lease distinction involve different products or lease transactions that have none of the qualities of a sale
 
 (see D.L. Lee & Sons v ADT Sec. Sys., Mid-S.,
 
 916 F Supp 1571, 1580-1581 [SD Ga 1995];
 
 Corral v Rollins Protective Servs. Co.,
 
 240 Kan 678, 688, 732 P2d 1260, 1267 [1987];
 
 Sellers v Frank Griffin AMC Jeep,
 
 526 So 2d 147, 156 [Fla Dist Ct App 1988]).
 

 Despite the similarities between DiCintio’s lease and a sale, we cannot accept that the lease qualifies as a sale under the Warranty Act, even assuming that the Act requires courts to analyze this issue in functional terms and without regard to the passage of title. Unlike a buyer, a lessee like DiCintio remains free not to exercise the option to buy. In that event, the lessee simply relinquishes possession of the vehicle at the end of the lease term, and may do so even sooner under certain conditions. A lessee, moreover, pays less than a buyer — according to DaimlerChrysler a buyer’s monthly payment for a 1999 Jeep Grand Cherokee Laredo might be triple DiCintio’s lease payments — and enjoys a somewhat different bundle of rights, as the lease’s restrictions on use suggest.
 

 
 *472
 
 While these differences may matter little to some consumers who lease in order to buy, and may not implicate policy considerations distinct from those which gave rise to the Warranty Act, they fortify our conclusion that the Act should be construed as written, to exclude leases like DiCintio’s. That conclusion is further fortified when we compare the Warranty Act to other consumer protection statutes. As DaimlerChrysler argues, the Truth in Lending Act (TILA; 15 USC § 1601
 
 et
 
 seq.) shows that when Congress wants to provide the same protections to lessees as to buyers, it knows how to do so.
 

 TILA, enacted seven years before the Warranty Act and amended in 1976, includes a finding that “there has been a recént trend toward leasing automobiles and other durable goods for consumer use as an alternative to installment credit sales and that these leases have bfeen offered without adequate cost disclosures” (15 USC § 1601 [b]). TILA defines a “consumer lease” in terms that would likely include DiCintio’s lease; it sets forth disclosure requirements relating to the financial terms of such leases; and it defines a “credit sale” in terms that include some leases but would not include DiCintio’s
 
 (see
 
 15 USC § 1667 [1]; §§ 1667a, 1602 [g]). By the 1970s, Congress was plainly aware of auto leasing, knew how to draft consumer protection statutes that cover leases and opted not to include such protection in the Warranty Act.
 

 The history of a precursor bill to the Warranty Act further supports this view. When the House Subcommittee on Commerce and Finance held hearings on H.R. 20 (93d Cong, 1st Sess, sponsored by Representative John E. Moss) in 1973, Professor Fairfax Leary of University of Pennsylvania Law School and the Public Interest Research Group criticized the bill for failing to include lessees in its definition of “consumer.” As Professor Leary told his congressional audience,
 

 “the bill uses the word ‘consumer,’ and the definition of a consumer is the first “buyer’ at retail. Thus, leasing is not covered.
 

 “Now chattel leasing is a very extensive business today even in the consumer area, as the State of California found out, Mr. Chairman, where, in one of their acts, they forgot to include chattel leasing. The result was that many automobiles were on a 36-month leasing basis, very rapidly because it avoided the terms.
 

 
 *473
 
 “I would suggest the insertion of 'first buyer or lessee of a consumer retail product’ ”
 
 (see Consumer Warranty Protection
 
 — 1973:
 
 Hearings on H.R. 20 and H.R. 5021 Before the Subcomm. on Commerce and Finance of the Comm, on Interstate and Foreign Commerce,
 
 93d Cong, at 95 [1973] [statement of Professor Fairfax Leary];
 
 see also Consumer Warranty Protection: Hearings on H.R. 6313, H.R. 6314, H.R. 261, H.R. 4809, H.R. 5037, H.R. 10673 [and similar and identical bills] Before the Subcomm. on Commerce and Finance of the Committee on Interstate and Foreign Commerce,
 
 92d Cong, at 119 [1971] [statement of Professor Fairfax Leary] [proposing definition of “purchaser” or “consumer” as “any ultimate user of a consumer product whose use is the natural and foreseeable consequence of placing the consumer product in the channels of distribution”]).
 

 Although the Warranty Act differs from H.R. 20 and the other precursor bills in many other respects, it too did not adopt Leary’s suggested language or define “consumer” to include lessees. Against the backdrop of such testimony, the omission of lessees appears all the more certainly to reflect a conscious policy choice made by Congress.
 

 Finally, our construction of the Warranty Act’s definitions not to include automobile leases is also supported by a comparison between the Act and the New Car Lemon Law (General Business Law § 198-a). The Lemon Law affords automobile consumers remedies comparable to those available under the Warranty Act, including attorneys’ fees
 
 (see
 
 General Business Law § 198-a [/]). Although it differs from the Warranty Act in certain respects,
 
 [5]
 
 a Federal appellate court called upon to compare the two statutes found the Lemon Law to be squarely in the mainstream of State laws designed to complement and enhance the Act’s protection of automobile consumers
 
 (see Motor Vehicle Mfrs.,
 
 899 F2d at 1317, 1324). In 1986, the Lemon Law was amended to include lessees in the definition of consumers, and the legislative history makes clear that the Legislature and Governor believed the pre-amendment definition — which is similar to the definition of “consumer” under the Act — would not have included auto lessees
 
 (see
 
 L 1986, ch
 
 *474
 
 799; Mem of State Executive Dept, 1986 McKinneys Session Laws of NY, at 3005, 3007; Governor’s Mem approving L 1986, ch 799, 1986 McKinneys Session Laws of NY, at 3202). While the 1986 Lemon Law amendment reveals little about Congress’s intentions when the Warranty Act was drafted in 1974, it confirms that legislatures can expand consumer protection laws to cover leases when they wish, and that New York lessees have the benefit of protections unavailable under Federal law.
 

 III.
 

 DiCintio raises a few further arguments designed to show that the Warranty Act covers his lease even if that lease is not a sale. He suggests that the “sale” may be the sale of the vehicle from Adzam to Chrysler Financial contemplated by the lease. This argument fails for two reasons. First, the lease indicates that the sale from Adzam to Chrysler Financial should occur only after the lease is executed. Thus, even if that sale could create a statutory “written warranty” enforceable by Chrysler Financial — and thereby trigger Warranty Act coverage — DiCintio is not a “person to whom such product is transferred during the duration of an implied or written warranty”
 
 (see
 
 15 USC § 2301 [3]).
 

 Second, it is questionable whether the warranty “becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale” when the vehicle is sold to Chrysler Financial
 
 (see
 
 15 USC § 2301 [6]). While Chrysler Financial’s purposes in buying may not be solely for “resale” — it collects rent before disposing of its rights in the property— ultimate resale is presumably an intrinsic part of its plan when it takes title to the vehicle. In this connection, Adzam looks even less like a “buyer for purposes other than resale.” Even though its lease to DiCintio is not a sale, it obviously intends to sell the vehicle to him or some other consumer. And, like Chrysler Financial, Adzam probably does not count Daimler-Chrysler’s limited warranties as “part of the basis of the bargain” when and if it becomes the vehicle’s owner for the purpose of conveying the vehicle to a retail customer.
 

 Finally, DiCintio suggests that he is a “person who is entitled by the terms of such warranty * * * or under applicable State law to enforce against the warrantor * * * the obligations of the warranty *
 
 *
 
 *” (15 USC § 2301 [3]). Again, the short answer is that the “warranty” must be a written or implied warranty as defined, and, as such, must arise in connection with a sale.
 

 
 *475
 
 In sum, because DiCintio’s transaction with Adzam was a lease rather than a sale, and there is no other relevant sale, there is no “written warrant/’ or “implied warrant/’ under the Warranty Act and DiCintio is not a “consumer.” Because he is not a consumer, DiCintio can find no relief in the substantive sections of the Warranty Act.
 

 Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, the first three causes of action in the complaint dismissed, and the certified question answered in the negative.
 

 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order, insofar as appealed from, reversed, etc.
 

 [1]
 

 . While DaimlerChrysIer’s appeal from this order was pending, DiCintio amended his complaint to include claims under the New Car Lemon Law (General Business Law § 198-a) and UCC article 2-A, and DaimlerChrysler answered. These claims are not under review here.
 

 [2]
 

 . A warranty that meets the minimum standards is a “full warranty”; one that does not is a “limited warranty” (15 USC § 2303 [a] [1], [2]).
 

 [3]
 

 . It is undisputed that a motor vehicle purchased for personal use, like DiCintio’s, is a consumer product under the Warranty Act’s definition
 
 (see
 
 15 USC § 2301 [1]).
 

 [4]
 

 . DiCintio does not contend that DaimlerChrysler’s “Basic Warranty” or other “limited warranties” are service contracts (see 15 USC § 2301 [8];
 
 see also Saladino v Team Chevrolet,
 
 242 Ill App 3d 735, 741, 611 NE2d 583, 588 [1993]).
 

 [5]
 

 . Specifically, the Lemon Law applies only during a vehicle’s first two years or 18,000 miles, and affords an affirmative defense to a manufacturer or dealer who can show that a defect does not substantially impair the vehicle’s value
 
 (see
 
 General Business Law § 198-a [b] [1]; [c] [3]).