■ Snow Machines, Inc., Respondent, v South Slope Development Corporation, Appellant. [754 NYS2d 383] —Kane, J. Appeal from an order of the Supreme Court (Rumsey, J.), entered March 28, 2002 in Cortland County, which granted plaintiff's motion for an order of seizure.

In October 1999, plaintiff sold three snow-making machines to Song Mountain Resort, LLC with payments due in installments. Plaintiff was to retain title to the machines as collateral until the contract was paid in full. Song Mountain defaulted on the payments, with an outstanding balance due of $51,360. In June 2001, plaintiff commenced a replevin action against Song Mountain and obtained an order of seizure from Supreme Court, permitting plaintiff to recover the machines. While attempting unsuccessfully to execute that order, plaintiff learned that Song Mountain had transferred possession of the machines to defendant, together with other real and personal property comprising the Song Mountain ski area.

Defendant had entered into a contract of sale with Tully Recreation, LLC, owner of Song Mountain, to purchase the ski resort. Although the contract was dated September 11, 2000, the sale actually closed in May 2001. In the interim, defendant and Tully entered into a master lease agreement which provided that defendant could "manage, operate and control" Song Mountain from October 1, 2000 to March 31, 2001, during which time defendant was to obtain financing. The lease agreement further provided that defendant would pay Tully monthly rent, a portion of which would apply to the purchase price if the parties closed on the sale. As additional rent, defendant was also required to pay taxes and insurance premiums on Song Mountain. By letter dated December 8, 2000, plaintiff's president informed defendant's representative of plaintiff's interest in the three snow-making machines. On May 21, 2001, the parties closed on the sale, and the snow-making machines

and other personal property, as well as the realty, were transferred to defendant.

Plaintiff commenced this action against defendant seeking the return of the snow-making machines and/or full payment on the balance due. By order to show cause, plaintiff sought a prejudgment order of seizure and a temporary restraining order against defendant. Supreme Court granted the motion, prompting this appeal.

Since plaintiff satisfied its burden of establishing the probability of its success on the merits in the underlying action, we find that Supreme Court properly granted plaintiff's motion for the prejudgment order of seizure (see CPLR 7102 [d]; see also Bendat v Premier Broadcast Group, 175 AD2d 536, 538).

Defendant first argues that Supreme Court improperly concluded that defendant was not a bona fide purchaser for value because defendant had notice of plaintiff's security interest before the collateral was delivered to defendant and before defendant gave value. Pursuant to UCC 9-317 (b), one who purchases property in which another holds a security interest takes title free and clear of that interest, "if the buyer gives value and receives delivery of the collateral without knowledge of the security interest * * * before it is perfected." We concur with Supreme Court's finding that defendant gave value and took delivery not in September 2000 as defendant argues, but in May 2001 at the closing. Although the contract of sale permitted defendant to enter Song Mountain "for the purpose of preparing for the upcoming ski season," the contract specified that "Possession of the Premises shall be provided to Buyer at Closing," which clearly contemplated that possession under the contract of sale would remain with the seller. Alternatively, defendant contends that it received delivery under UCC 9-317 (b) when it gained the ability "to manage, operate and control" Song Mountain pursuant to the parties' lease agreement. However, as Supreme Court properly noted, when defendant took possession of the property in September 2000, it did not do so pursuant to the contract of sale but, rather, pursuant to the lease agreement and, thus, defendant was a lessee, not a buyer.

Nor do we subscribe to defendant's reasoning that since rent payments were applied to the ultimate purchase price and insurance premiums had to be maintained (see generally DiCintio v DaimlerChrysler Corp., 97 NY2d 463, 471), the lease payments were, in effect, installment payments of the purchase price. Clearly, the parties manifested no intention for the lease agreement to operate as a purchase agreement (compare

*Industralease Automated & Scientific Equip. Corp. v R.M.E. Enters.*, 58 AD2d 482, 487; *see also Chase Lincoln First Bank v Smith*, 144 AD2d 816, 819). Significantly, the lease agreement did not give defendant title rights to any of the items of personal property located on the premises or to the premises itself; all title remained in the seller, Tully, until it was transferred at the closing in May 2001. Thus, although UCC 1-201 (14) provides that "delivery" refers to a voluntary transfer of possession, Supreme Court properly concluded that to benefit under UCC 9-317 (b), such transfer of possession must "be clearly referable to the ultimate purchase" and not, as here, to a grant of temporary possession under a lease agreement.

Next, we reject defendant's argument that it paid value by making a down payment on the property on September 11, 2000 pursuant to the parties' purchase agreement, and made several installment payments, based on the parties' lease agreement, between October 2000 and December 2000 prior to learning of plaintiff's security interest. Defendant's reliance on UCC 1-201 (44), which provides that value is given "(c) by accepting delivery pursuant to a pre-existing contract for purchase; or (d) generally, in return for any consideration sufficient to support a simple contract," is misplaced. Here, defendant had not accepted delivery pursuant to the contract before it learned of plaintiff's security interest. Further, the down payment made by defendant was not applied to the contract price, but was to be refunded to defendant when the full contract price was paid. The taxes and insurance premiums that defendant paid to Song Mountain prior to closing were not applied to the actual purchase price but, rather, were denominated "additional rent" under the lease.

Contrary to defendant's argument, plaintiff was not required to perfect its security interest in order to give it effect. Indisputedly, plaintiff's security interest was not perfected at any time prior to May 2001, but a security interest may be enforceable even in the absence of perfection (*see* UCC 9-203 [a]). Despite defendant's contention that it believed plaintiff's interest either did not exist or that the matter had been resolved, and that plaintiff did not file to perfect its interest, defendant had actual knowledge of plaintiff's interest based on the December 2000 letter that it received from plaintiff's representative. Defendant, having become aware of plaintiff's prior interest in the machines, had a responsibility to ensure that the interest no longer existed at the time of closing in May 2001 (*see Yen-Te Hsueh Chen v Geranium Dev. Corp.*, 243 AD2d 708, 709, *lv*

*dismissed* 91 NY2d 921), or bear the risk of purchasing the property without doing so. Significantly, the seller's obligation under the contract to deliver the property free of encumbrances was an obligation effective at closing of title and not on delivery of the property under the lease. With respect to the snow-making machines, defendant, at closing, had the option of paying plaintiff's claim and deducting the sum from the purchase price as well as other remedies.

Crew III, J.P., Carpinello, Mugglin and Rose, JJ., concur. Ordered that the order is affirmed, without costs.