Jaime R. PETERSON, Plaintiff-Appellant,

v.

VOLKSWAGEN OF AMERICA, INC.,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 2003AP955. Oral argument January 6, 2005.
—Decided May 27, 2005.*

2005 WI 61

(Also reported in 697 N.W.2d 61.)

40

41

For the defendant-respondent-petitioner there were briefs by *Bruce D. Huibregtse, Laura Skilton Verhoff, Drew J. Cochrane* and *Stafford Rosenbaum, LLP,* Madison, and oral argument by *Drew J. Cochrane.*

For the plaintiff-appellant there was a brief by *Gregory H. Moss* and *Krohn & Moss, Ltd.,* Chicago, IL, and oral argument by *Scott Cohen.*

¶ 1. JON P. WILCOX, J. This is a review of a published court of appeals decision, *Peterson v. Volkswagen of America, Inc.,* 2004 WI App 76, 272 Wis. 2d 676, 679 N.W.2d 840, reversing an order of the Waukesha County Circuit Court, Lee S. Dreyfus, Judge. The circuit court granted Volkswagen's motion to dismiss Jamie R. Peterson's (Peterson) three-count complaint, which sought various forms of relief under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 (2000)[hereinafter "the MMWA" or "the Act"].[1]

## I. ISSUE

¶ 2. The question presented is whether Peterson, as a lessee, meets the definition of "consumer" under the MMWA, such that she can maintain a cause of

---

[1] All subsequent references to the United States Code are to the 2000 version unless otherwise noted.

action under the Act for breach of written warranty against the manufacturer and warrantor of an allegedly defective vehicle. We hold that Peterson has alleged sufficient facts to qualify as a category two consumer under the Act because the facts alleged in her complaint indicate that Volkswagen's warranty satisfies the definition of "written warranty" and because Peterson has alleged that the vehicle in question was transferred to her during the duration of Volkswagen's warranty. Volkswagen's warranty constitutes a "written warranty" under the MMWA because Peterson has alleged that it was issued by Volkswagen in connection with the sale of the vehicle by an authorized dealer to a lending institution in order to facilitate the lease, the warranty was part of the basis of the bargain between the dealership and the lending institution, and the lending institution purchased the vehicle for purposes other than resale.

¶ 3. Furthermore, we conclude that Peterson has pled sufficient facts to qualify as a category three consumer because the facts alleged in her complaint indicate that Volkswagen's warranty satisfies the definition of "written warranty" and because Peterson has alleged that she was entitled by the terms of Volkswagen's warranty to enforce said warranty against Volkswagen. Therefore, we affirm the decision of the court of appeals.

## II. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 4. On September 18, 2002, Peterson filed a three-count complaint against Volkswagen, alleging breach of written warranty, breach of implied warranty, and revocation of acceptance under the MMWA. The pertinent facts as alleged in her complaint are as follows.

44

¶ 5. On March 27, 1999, Peterson leased a new 1999 Volkswagen Beetle, manufactured by the defendant, from North Shore Bank (the Bank). "Prior to or contemporaneous to Plaintiff's lease of the Beetle," Ernie Von Schledorn Pontiac Buick Volkswagen (EVS), an authorized Volkswagen dealer, sold the Beetle to the Bank. The Bank "purchased the Beetle for purposes other than resale." The Bank "purchased the Beetle to lease to the Plaintiffs [sic]." As part of the consideration for the sale of the Beetle, Volkswagen issued the Bank a written warranty "which included a two (2) year or twenty-four thousand (24,000) mile bumper to bumper coverage" in addition to other warranties. At the time of the sale, the Beetle had been driven 100 miles and was covered by Volkswagen's written warranty.

¶ 6. On March 27, 1999,[2] the Bank assigned it rights in the defendant's written warranty to Peterson and "[t]he transfer of [the] written warranty occurred during the duration of said warranty." The Bank would not have purchased the vehicle without the issuance of the warranty and Peterson would not have leased the vehicle without the transfer of the warranty.

¶ 7. Shortly after taking possession of the vehicle, Peterson began experiencing several problems with the vehicle that "substantially impair[ed] the use, value and/or safety of the Beetle." Such defects violated the defendant's written warranty and implied warranty of merchantability. Peterson furnished the vehicle to authorized Volkswagen dealers for repairs on several occasions. The defendant "allowed [Peterson] to enforce

_____

[2] The complaint incorrectly stated that Peterson took possession of the vehicle on March 27, 2002. We also note that the first sentence of the complaint incorrectly identified the defendant as General Motors Corporation.

its written warranty" and said repairs "were covered by [Volkswagen's] written warranty."

¶ 8. The defects in the vehicle remained uncorrected despite the numerous attempts at repair. The defects substantially impaired the value of the vehicle, and Peterson justifiably lost confidence in the vehicle after allowing Volkswagen a reasonable number of attempts to cure the defects. Peterson thereafter attempted to revoke her acceptance of the vehicle in writing, and Volkswagen refused her demand for revocation.

¶ 9. Peterson attached an unsigned copy of the lease as an exhibit to her complaint, which stated at the top of the document: "WITH ASSIGNMENT TO NORTH SHORE BANK, FSB." Peterson did not attach a copy of the warranty to her complaint, and the warranty is not part of the record.

¶ 10. Volkswagen filed its answer on December 9, 2002, which denied many of the allegations in the complaint and affirmatively alleged that Peterson leased the vehicle in question from EVS, not the Bank. Volkswagen also asserted various affirmative defenses. It maintained that Peterson failed to state a claim upon which relief could be granted and that the MMWA did not apply to Peterson because she is a lessee. On the same date, Volkswagen filed a notice of motion and motion to dismiss under Wis. Stat. § 802.06 (2001–02),[3] asserting that Peterson failed to state a claim upon which relief could be granted because she is a lessee and the MMWA does not apply to lessees.[4]

_____

[3] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

[4] Subsequently, Peterson served upon Volkswagen interrogatories, a request for production of documents, and a request

¶ 11. In her brief in opposition to dismissal, Peterson attached as an exhibit an affidavit from one Richard Wibe, a lease manager at EVS who had "overseen over a thousand lease transaction[s] for the lease of cars at my dealer."[5] The affidavit describes in detail Peterson's dealing with EVS and the relationship between EVS and the Bank.[6]

¶ 12. A hearing was held on the motion to dismiss on February 10, 2003. The circuit court ruled:

> I'm satisfied that regardless of how you define it that the plaintiff in this case does not constitute a consumer under the Magnuson-Moss Warranty Act. Now, I would note and I'm satisfied that that's a legislative issue to ultimately be addressed.
>
> . . . .
>
> However, I'm also satisfied that at least based upon

for admissions. In response, on January 2, 2003, Volkswagen filed a motion for a protective order under Wis. Stat. § 804.01(3)(a)2., seeking a stay of discovery pending the circuit court's resolution of the motion to dismiss. The record does not indicate whether this motion was granted. However, the record does not contain any responses to the above discovery requests.

[5] Volkswagen filed a motion to strike the brief filed by Peterson in response to its motion to dismiss as untimely. The record does not indicate whether this motion was granted.

[6] Wibe stated that "[a]s a matter of practice, after Ms. Peterson expressed an interest in leasing a vehicle from [EVS], my dealer contacted [the Bank] to see if they would agree to lease the vehicle to Ms. Peterson and in turn purchase the car from my dealer." Further, he stated that EVS sold the vehicle in question to the Bank after the Bank agreed to lease the vehicle to Peterson "so that [the Bank] may lease it to Ms. Peterson." He also stated that the Bank "did not purchase the vehicle for inventory purposes but rather to immediately lease the vehicle to Ms. Peterson." Finally, he stated that Peterson was entitled to enforce the warranty the same as a new car purchaser.

[Volkswagen's] analysis, and I'm satisfied it's a correct one, it still has to apply to a buyer that on the basis that the — a warranty, whether written or implied, must be in connection with the sale of a vehicle.

Now, in this case the person who's attempting to enforce it was not the purchaser. That's an issue that we cannot get around. Clearly, they are the lessee. The purchaser is North Shore Savings.

On February 26, 2003, the circuit court entered an order for final judgment and judgment dismissing Peterson's complaint.

¶ 13. The court of appeals reversed, concluding that Peterson was entitled to enforce Volkswagen's written warranty[7] as a category two consumer under the MMWA. *Peterson,* 272 Wis. 2d 676, ¶ 17.

We agree with the courts that have held that where the sale of a vehicle is merely to facilitate a lease, the issuance of the warranty accompanies this sale, and the lessor explicitly transfers its rights in the warranty to the lessee—the lessee is protected by the Magnuson-Moss Act. . . . The statutorily defined term "written warranty" does not dictate that the sale be made to an ultimate consumer with a passage of title to the party. The language of the Act demands only that we find a warranty exchange between a buyer and a supplier in connection with a sale made for purposes other than resale. . . . To the extent that a lessee fits the definition of "consumer" by receiving an automobile in transfer, it would be unreasonable, if not illogical, to conclude that a lessee does not enjoy the same right to enforce a warranty as a purchaser enjoys.

*Id.,* ¶ 15. The court of appeals also stated that it was

---

[7] The court of appeals did not consider whether Peterson had standing to pursue her claim of breach of implied warranty under the MMWA.

significant that Peterson alleged that Volkswagen's warranty was in effect at the time of the transfer and that the terms of the warranty were part of the bargain between EVS and the Bank. *Id.,* ¶ 17. The court did not address whether Peterson also qualified as a category three consumer. *Id.*

## III. STANDARD OF REVIEW

██

¶ 14. Wisconsin Stat. § 802.06(2)(a)6. allows a party to move to dismiss a complaint on the ground that the complaint fails to state a claim upon which relief can be granted. Such a motion "tests the legal sufficiency of the complaint." *Watts v. Watts,* 137 Wis. 2d 506, 512, 405 N.W.2d 305 (1987). "Whether a complaint states a claim upon which relief may be granted is a question of law and this court need not defer to the circuit court's determination." *Id.*

██

¶ 15. When reviewing a motion to dismiss, we assume the facts set forth in the complaint are true and consider only the facts set forth therein. *Larson v. City of Tomah,* 193 Wis. 2d 225, 227, 532 N.W.2d 726 (1995). However, "[w]hen a document is attached to the complaint and made part thereof, it must be considered a part of the pleading, and may be resorted to in determining the sufficiency of the pleadings." *Friends of Kenwood v. Green,* 2000 WI App 217, ¶ 11, 239 Wis. 2d 78, 619 N.W.2d 271.[8] Any document so attached prevails over inconsistent averments in the complaint. *Id.*

[8] Therefore, we will consider the lease Peterson attached to her complaint. However, we will not consider the affidavit Peterson attached to her brief in opposition to Volkswagen's motion to dismiss.

¶ 16. We will not grant a motion to dismiss "unless it appears certain that no relief can be granted under any set of facts that a plaintiff can prove in support of his or her allegations." *Watts,* 137 Wis. 2d at 512. As such, courts are to liberally construe a complaint and should deny a motion to dismiss when the

---

We note that Wis. Stat. § 802.06(2)(b) provides, in pertinent part:

> If on a motion asserting the defense described in par. (a)6. to dismiss for failure of the pleading to state a claim upon which relief can be granted, or on a motion asserting the defenses described in par. (a) 8. or 9., *matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08,* and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by s. 802.08.

(Emphasis added.) *See also* Wis. Stat. § 802.06(3).

. Here, Peterson attached an affidavit to her brief in opposition to Volkswagen's motion to dismiss. Volkswagen moved to strike the entire brief as untimely. Further, at the hearing on the motion to dismiss, counsel for Volkswagen emphasized that the affidavit should not be considered. When the circuit court made its oral ruling, it made no mention of the affidavit and treated the motion as a motion to dismiss, not one for summary judgment. The circuit court stated: "However, I'm going to grant the Motion to Dismiss and for the following reasons."

Therefore, there is a reasonable inference from the record that the circuit court excluded the affidavit for purposes of Volkswagen's motion. As such, we will continue to treat the motion as one for judgment on the pleadings and not one for summary judgment. Our decision to affirm the court of appeals' reversal of the circuit court's order granting the motion to dismiss will allow the parties the opportunity to conduct discovery on remand and present disputed issues of fact, if they exist.

50

facts alleged, if proven true, would constitute a cause of action. *Keller v. Welles Dept. Store of Racine,* 88 Wis. 2d 24, 28–29, 276 N.W.2d 319 (Ct. App. 1979).

## IV. ANALYSIS

¶ 17. The federal MMWA "allows a consumer to bring suit against a warrantor in any state for failure to comply with its obligations under a written warranty or implied warranty." *Mayberry v. Volkswagen,* 2005 WI 13, ¶ 16, 278 Wis. 2d 39, 692 N.W.2d 226 (citing 15 U.S.C. § 2310(d)(1)). An individual seeking to bring suit under the MMWA against a warrantor[9] must fall within one of the three categories set forth under the definition of "consumer" in 15 U.S.C. § 2301(3). *Dekelaita v. Nissan Motor Corp.,* 799 N.E.2d 367, 370 (Ill. App. Ct. 2003).[10]

¶ 18. In order to determine whether Peterson, as a lessee, may pursue a cause of action under the Act for breach of express warranty, we must determine whether she is a "consumer" under the Act, which in turn requires us to determine whether there is a

---

[9] A "warrantor" is defined as "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." 15 U.S.C. § 2301(5). In turn, a "supplier" is defined as "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. § 2301(4). There is no dispute that Volkswagen qualifies as a "warrantor" under the Act.

[10] While the MMWA does not utilize the terms "category one," "category two," and "category three" consumer, we find this terminology to be useful in analyzing who qualifies as a consumer under the Act.

"written warranty" as defined under the Act.[11] Statutory interpretation is an issue of law, reviewed de novo by this court. *State v. Waushara County Bd. of Adjustment,* 2004 WI 56, ¶ 14, 271 Wis. 2d 547, 679 N.W.2d 514.

¶ 19. The rules governing statutory interpretation are well settled:

> When interpreting statutes, our goal is to give effect to the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 43, 271 Wis. 2d 633, 681 N.W.2d 110. We begin by looking to the language of the statute because we "assume that the legislature's intent is expressed in the statutory language." *Id.,* ¶ 44. Technical terms or legal terms of art appearing in the statute are given their accepted technical or legal definitions while nontechnical words and phrases are given their common, everyday meaning. Wis. Stat. § 990.01(1). Terms that are specifically defined in a statute are accorded the definition the legislature provided. *Wisconsin Citizens Concerned for Cranes and Doves v. DNR,* 2004 WI 40, ¶ 6, 270 Wis. 2d 318, 677 N.W.2d 612. In addition, we read the language of a specific statutory section in the context of the

---

[11] We are cognizant that Peterson's complaint also stated a cause of action for breach of implied warranty. An "implied warranty" under the Act is "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). Although the court of appeals did not explicitly consider whether Peterson could pursue this claim, the issue was briefly addressed in the parties' submissions to this court. However, it is unnecessary to address whether Peterson qualifies as a "consumer" in relation to her claim for breach of implied warranty because, as Volkswagen correctly indicates, the Act's definition of "implied warranty" is not satisfied in this case.

52

entire statute. *Id.* Thus, we interpret a statute in light of its textually manifest scope, context, and purpose. *Kalal,* 271 Wis. 2d 633, ¶ 48 & n.8.

*Bosco v. LIRC,* 2004 WI 77, ¶ 23, 272 Wis. 2d 586, 681 N.W.2d 157. As such, extrinsic sources, such as legislative history, are not consulted unless the statute is ambiguous. *Kalal,* 271 Wis. 2d 633, ¶ 46. A statute is ambiguous if it is susceptible to more than one reasonable understanding. *Id.,* ¶ 47.

¶ 20. Volkswagen argues that lessees are not "consumers" under the Act because the pertinent definitions of "consumer" require the warranty in question qualify as a "written warranty" under the Act. According to Volkswagen, the definition of "written warranty" requires a sale to the person seeking to enforce the warranty. Volkswagen argues that its written warranty does not qualify as a "written warranty" under the MMWA because there was no "sale" to Peterson and consequently Peterson does not qualify under any of the definitions of "consumer."

¶ 21. Peterson, while conceding that she does not fall within the first definition of "consumer" under the Act, nonetheless maintains that she qualifies as a category two or category three consumer. Peterson argues that she qualifies as a category two consumer because the vehicle was transferred to her during the duration of Volkswagen's written warranty. Peterson asserts that she also qualifies as a category three consumer because she was entitled under the terms of Volkswagen's written warranty to enforce the warranty, as Volkswagen made numerous repairs to the vehicle under the warranty free of charge. Finally, Peterson contends that Volkswagen's written warranty does, in

fact, constitute a "written warranty" under the Act because the MMWA does not require that a sale be made directly to the ultimate consumer of the product. She states that EVS sold the vehicle to the Bank for purposes other than resale and that this transaction renders Volkswagen's warranty a "written warranty."

¶ 22. At the outset, we recognize that there exists a split of authority as to whether an automobile lessee may qualify as a "consumer" under the MMWA. The leading case concluding that the MMWA does not apply to leases, and the case upon which Volkswagen principally relies, is *DiCintio v. DaimlerChrysler Corp.,* 768 N.E.2d 1121 (N.Y. 2002). Peterson, in contrast, relies primarily on a line of cases from Illinois, beginning with *Cohen v. AM General Corp.,* 264 F. Supp. 2d 616, 621 (E.D. Ill. 2003), which holds that a lessee may qualify as a category two or category three consumer. This question is an issue of first impression in Wisconsin. Ultimately, we conclude that the reasoning of the authorities relied upon by Peterson is more congruent with the plain meaning of the pertinent provisions of the MMWA than the analysis employed by *DiCintio.* Thus, we begin by examining the text of the MMWA.

¶ 23. As noted, in order to have standing to bring suit under the MMWA, an individual must meet the definition of "consumer" under the Act. A category one consumer is "a buyer (other than for purposes of resale) of any consumer product."[12] 15 U.S.C. § 2301(3). The parties agree that Peterson does not qualify as a category one consumer. A category two consumer is "any person to whom such product is transferred during the

---

[12] "Consumer product" is defined in 15 U.S.C. § 2301(1). The parties do not dispute that the automobile in this case falls within this definition.

duration of an implied or written warranty (or service contract) applicable to the product." *Id.* Finally, a category three consumer is "any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." *Id.*[13]

¶ 24. Volkswagen argues that Peterson is not a category two consumer because Volkswagen's warranty does not meet the definition of "written warranty" under the Act, as there was no sale of the vehicle to Peterson. The MMWA contains two definitions of "written warranty." Peterson concedes that only the second definition is applicable here. Thus, we turn to the definition of "written warranty" in § 2301(6)(B). Section 2301(6)(B) defines a "written warranty" as:

> any undertaking in writing *in connection with the sale by a supplier of a consumer product* to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain *between a supplier and a buyer for purposes other than resale of such product.*

(Emphasis added.) The Act does not define the term "sale" or the phrase "in connection with the sale." Volkswagen argues that the "sale" referred to in the Act must be to the ultimate consumer in order for a written warranty to meet the definition of "written warranty." Further, it argues that even if the sale of the vehicle from EVS to the Bank qualifies as a sale under the Act,

---

[13] This case does not involve a service contract.

it nonetheless was not a sale "for purposes other than resale." For the reasons discussed below, we reject these arguments.

¶ 25. First, the plain language of § 2301(6)(B) does not limit to whom a sale can be made or require a sale to the ultimate consumer. Rather, the MMWA requires only that the warranty be issued "in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(6)(B).

> The legislature's definition[] of "written warranty" . . . state[s] quite simply that the warranty be issued "in connection with the sale" of a consumer product: Congress does not demand its readers to conclude that the sale must be between the consumer and the supplier.
>
> Where, as here, there was a sale—between the dealer and the lessor—it suffices to say that there was a written warranty issued in connection with the sale. In no event does the Act limit a "sale" to transactions between the warrantor and the ultimate consumer.

*Dekelaita,* 799 N.E.2d at 373.[14] " 'Sale,' . . . is not limited

---

[14] *See also Mangold v. Nissan N. Am., Inc.,* 809 N.E.2d 251, 254–55 (Ill. App. Ct. 2004):

> The plain language of the statute simply requires that warranties under the Act be issued "in connection with the sale" of a consumer product. It does not require a sale to be made to the ultimate consumer with a passage of title to that party and does not forbid the subsequent assignment of the warranty. Given the plain language of the statute, "in connection with [a] sale" means the sale between the dealership and [the leasing company].
>
> Since the vehicle was sold to the lessor with a manufacturer's written warranty, the warranty was made "in connection with" the sale . . . .

(Citations omitted.)

56

to transactions between the warrantor and the ultimate consumer." *Cohen,* 264 F.Supp. 2d at 619.

¶ 26. We also note that the definition of "written warranty" utilizes the term "supplier," which is defined as "any person engaged in the business of making a consumer product *directly or indirectly* available to consumers." 15 U.S.C. § 2301(4)(emphasis added). If Congress had intended to require a direct sale between a manufacturer and the ultimate consumer in order for the definition of "written warranty" to be satisfied, it would not have included the term "supplier" in the definition of "written warranty" or defined the term "supplier" so broadly.

> At least with written warranties, the Act does not require that a supplier be in contractual privity with the consumer so as to restrict the meaning of "sale" to be a transaction only between a direct supplier and a consumer. Rather, the Act implicates those suppliers who make their products "indirectly available to consumers." Here, [the dealership] made the car directly available to the lessor and lessee[]. Applying the plain language of the statute, it follows that defendant manufacturer . . . made the automobile *indirectly* available to consumers. In short, there was a "written warranty" issued in connection with the sale from a "supplier" to a "consumer"—albeit, but permissibly, *indirectly.*

*Dekelaita,* 799 N.E.2d at 373–74 (citations omitted). Here, Volkswagen clearly made "a consumer product . . . indirectly available" to Peterson.

¶ 27. However, the court in *DiCintio* reached a contrary conclusion, ruling that a lessee did not meet the definition of "written warranty" because such definition required the transfer of title to a consumer. *DiCintio,* 768 N.E.2d at 1124. In *DiCintio,* the court relied on the definition of "sale" under the Uniform

Commercial Code and stated that under that statute, a transfer of title was required for a sale to occur. *Id.* The court then concluded that no sale had occurred under the MMWA because title did not pass to the plaintiff under his lease. *Id.* The court also relied heavily on the legislative history of a precursor to the MMWA to support its conclusion that lessees were not covered under the definition of "consumer" in the Act. *Id.* at 1125–26.

¶ 28. We respectfully disagree with the rationale of *DiCintio*. First, even assuming it is appropriate to turn to the Uniform Commercial Code for the definition of "sale," nothing in the text of the MMWA limits to whom the sale must be made. That is, even conceding that the MMWA requires a transfer of title for a sale to occur, it does not require that title be transferred to the ultimate consumer. Also, we note that requiring that title be transferred to the ultimate user of the product would render superfluous the second category of "consumer," as anyone to whom title was transferred through a sale would necessarily constitute a category one consumer—"a buyer . . . of any consumer product." 15 U.S.C. § 2301(3).

¶ 29. Here, Peterson alleged that EVS sold the Beetle to the Bank "[p]rior to or contemporaneous to the Plaintiff's lease of the Beetle."[15] Further, Peterson alleged: "In consideration for the sale of the Beetle, Manufacturer issued and supplied to Lessor its written warranty . . . ." Thus, assuming these allegations in the complaint are true, Volkswagen issued a written warranty "in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(6)(B).

---

[15] At oral argument, Volkswagen conceded that a sales transaction between EVS and the Bank occurred at some point in time.

¶ 30. In addition, we disagree with the *DiCintio* court's reliance on legislative history. As noted, Wisconsin courts generally do not examine legislative history unless the text of the statute is ambiguous. Simply put, nothing in the text of the MMWA's definition of "written warranty" requires or even suggests a requirement that there be a sale to the ultimate consumer. Congress chose to specifically define "written warranty" in terms of a "writing in connection with the sale by a supplier[.]" 15 U.S.C. § 2301(6)(B). We will not delve into legislative history and judicially graft a requirement onto the statute that does not appear in the text of the statute.[16] Moreover, the legislative history relied upon by the *DiCintio* court was not even that of the MMWA itself but rather "[t]he history of a precursor bill[.]" *DiCintio,* 768 N.E.2d at 1125.

¶ 31. Therefore, we conclude that the "sale" referred to in the definition of "written warranty" need not be between the manufacturer and ultimate consumer. Here, Volkswagen's warranty was allegedly issued in connection with the sale of the Beetle to the Bank. This allegation is sufficient to satisfy the statutory requirement of a "writing in connection with the sale by a supplier" in the definition of "written warranty." 15 U.S.C. § 2301(6)(B).

¶ 32. In addition, Peterson specifically alleged that Volkswagen's issuance of a warranty to the Bank

---

[16] *See Wis. Citizens Concerned for Cranes and Doves v. DNR,* 2004 WI 40, ¶ 21, 270 Wis. 2d 318, 677 N.W.2d 612 ("Wisconsin courts have long followed the rule that '[w]here a word or phrase is specifically defined in a statute, its meaning is as defined in the statute, and no other rule of statutory construction need be applied:' ") (quoting *Beard v. Lee Enters., Inc.,* 225 Wis. 2d 1, 23, 591 N.W.2d 156 (1999)).

was part of the consideration for the purchase of the vehicle and that the Bank would not have purchased the vehicle but for the issuance of the warranty. Thus, Peterson has alleged sufficient facts to satisfy the part of the definition of "written warranty" that requires that the "written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer[.]" 15 U.S.C. § 2301(6)(B).

¶ 33. However, Volkswagen contends that even if all of these prerequisites have been met, the sale of the Beetle from EVS to the Bank and the issuance of the warranty were not "for purposes other than resale of such product." *Id.* Volkswagen, again relying on *DiCintio,* contends that the sale of the vehicle was not for purposes other than resale because Peterson retains an option to purchase the vehicle at the end of the lease.[17]

¶ 34. The *DiCintio* court concluded that when an automobile dealership sells a vehicle to a leasing company, "ultimate resale is presumably an intrinsic part of [the leasing company's] plan when it takes title to the vehicle. . . . Even though its lease to [the plaintiff] is not a sale, [the leasing company] obviously intends to sell the vehicle to him or some other consumer." *DiCintio,* 768 N.E.2d at 1127. *See also Voelker v. Porsche Cars N. Am., Inc.,* 353 F.3d 516, 523 (7th Cir. 2003)(accord). Again, we disagree with the reasoning of *DiCintio.*

¶ 35. "While it is true that [the leasing company] [i]s likely to sell the vehicle after the expiration of the

---

[17] Volkswagen also argues that the sale was not for purposes other than resale because EVS, not the Bank, is the lessor of the Beetle. However, Peterson alleged in her complaint that she leased the vehicle from the Bank. This allegation is supported by the lease itself, which was attached as an exhibit to the complaint and clearly contains a clause at the top of the form assigning the lease to the Bank.

lease (potentially even to plaintiff[]), the *purpose* of the transaction between [the leasing company] and defendant was not for resale, but for the lease of the vehicle to plaintiff[]." *Cohen,* 264 F. Supp. 2d at 619. Further,

> the court's reading of the statute in *DiCintio* . . . would render many purchasers of automobiles unable to sue for breach of warranty. Certainly, many customers plan on selling or trading in a vehicle after years of use. The Act requires us to look for the reason that the vehicle was purchased, and the reason was the subsequent lease to plaintiff[], not resale.

*Id.* at 620. Furthermore, "most automobile purchasers buy a car with the ultimate goal of resale, although maybe not until much later. Under the *DiCintio* court's reasoning, few buyers could ever enforce the Act." *Dekelaita,* 799 N.E.2d at 375.

¶ 36. Peterson alleged in her complaint that the Bank "purchased the Beetle for purposes other than resale." The Bank "purchased the Beetle to lease to the Plaintiffs [sic]." Therefore, assuming the allegations in the complaint are true, we conclude that EVS's sale of the Beetle to the Bank was "for purposes other than resale of [the vehicle]." 15 U.S.C. § 2301(6)(B).

¶ 37. As such, Peterson's complaint has alleged facts sufficient to meet the definition of "written warranty" under the Act. Therefore, having concluded that Volkswagen's warranty constitutes a "written warranty" under the Act, we now examine whether Peterson meets the remaining criterion to qualify as a category two consumer. Specifically, we must determine whether Peterson is a person "*to whom such product is transferred during the duration of* a[] . . . written warranty." 15 U.S.C. § 2301(3)(emphasis added).

¶ 38. In *DiCintio,* the court concluded that the plaintiff did not qualify as a category two consumer

61

because the sale of the vehicle to the leasing company occurred after the lease was executed and thus, even if the sale was sufficient to create a "written warranty" under the Act, "DiCintio is not a 'person to whom such product is transferred during the duration of an implied or written warranty.' " *DiCintio,* 768 N.E.2d at 1127 (quoting 15 U.S.C. § 2301(3)). Likewise in *Voelker,* the court concluded that the plaintiff did not qualify as a category two consumer because in order to qualify as a category two consumer, the product in question must have been " 'transferred *during the duration of* " a written warranty. *Voelker,* 353 F.3d at 524 (quoting 15 U.S.C. § 2301(3)) (emphasis supplied by *Voelker*). The court noted that the warranty in question "did not begin until *after* possession of the car transferred to Voelker, and not 'during [the warranty's] duration.' " *Id.*

¶ 39. While both *DiCintio* and *Voelker* are correct that a vehicle leased before the warranty takes effect is not "transferred during the duration of" a written warranty, 15 U.S.C. § 2301(3), here, Peterson alleged in her complaint that the warranty was in effect at the time of the lease. She alleged that the vehicle was sold to the Bank prior to her lease and that Volkswagen issued the Bank a written warranty as part of the consideration for the sale of the Beetle. Further, she averred that at the time of the sale, the Beetle was "covered by [Volkswagen's] written warranty." She asserted that on March 27, 1999, the date she leased the vehicle, the Bank assigned its rights in the Volkswagen's written warranty to Peterson and *"[t]he transfer of [the] written warranty occurred during the duration of said warranty."* (Emphasis added.)

¶ 40. As there is not a copy of the warranty in the record stating otherwise, we assume for purposes of the motion to dismiss that Peterson's allegation that she

leased and took possession of the vehicle during the duration of the warranty is true. Assuming the allegations in her complaint are true, Peterson is a "person to whom such product is transferred during the duration of a[] . . . written warranty." 15 U.S.C. § 2301(3). Therefore, we hold that Peterson has alleged sufficient facts to proceed under the MMWA as a category two consumer because her factual allegations satisfy the second definition of "consumer" and the definition "written warranty" under the Act.

¶ 41. However, even if the Beetle was not transferred to Peterson during the duration of the warranty, we conclude that she nonetheless would be able to proceed under the Act as a category three consumer because her factual allegations establish that she is a "person who is entitled by the terms of such warranty . . . to enforce against the warrantor . . . the obligations of the warranty[.]" 15 U.S.C. § 2301(3). Peterson alleged that the Bank assigned her its rights in Volkswagen's warranty. She also alleged that she furnished the vehicle to authorized Volkswagen dealers for repairs on numerous occasions for several different problems and that Volkswagen "allowed [her] to enforce its written warranty" and said repairs were "covered by [the] written warranty." Thus, even though we do not have the warranty before us, Volkswagen cannot seriously argue (at this stage in the proceedings) that Peterson was not entitled to enforce its warranty. We agree with the reasoning of the court in *Mangold v. Nissan North America, Inc.,* 809 N.E.2d 251, 253–54 (Ill. App. Ct. 2004) on this issue.

> To facilitate the lease, [the leasing company] assigned its warranty rights to plaintiff[]. . . .
>
> Moreover, in this case, the dealership actually ser-

viced plaintiff['s] vehicle numerous times, and each time the repairs were covered by the warranty. We find no merit in allowing plaintiff[] to enforce the warranty for repairs, but denying warranty rights when a violation under the Act is asserted.

¶ 42. Rather than arguing that Peterson was not entitled to enforce the warranty, Volkswagen contends that Peterson fails to satisfy the criteria for a category three consumer because its warranty is not a "written warranty" under the Act. However, as we have already concluded that Volkswagen's warranty qualifies as a "written warranty," we hold that Peterson has alleged sufficient facts to proceed as a category three consumer.

## V. CONCLUSION

¶ 43. In summary, we hold that Peterson has alleged sufficient facts to qualify as a category two consumer because the facts alleged in her complaint indicate that Volkswagen's warranty satisfies the definition of "written warranty" and because Peterson has alleged that the vehicle in question was transferred to her during the duration of Volkswagen's warranty. Volkswagen's warranty constitutes a "written warranty" under the MMWA because Peterson has alleged that it was issued in connection with the sale of the vehicle by EVS to the Bank in order to facilitate the lease, the warranty was part of the basis of the bargain between EVS and the Bank, and the Bank purchased the vehicle for purposes other than resale.

¶ 44. Furthermore, we conclude that Peterson has pled sufficient facts to qualify as a category three consumer because the facts alleged in her complaint indicate that Volkswagen's warranty satisfies the definition of "written warranty" and because Peterson has

64

alleged that she was entitled by the terms of Volkswagen's warranty to enforce said warranty against Volkswagen. Therefore, we affirm the decision of the court of appeals.[18]

¶ 45. *By the Court.*—The decision of the court of appeals is affirmed.

---

[18] We emphasize that we do not hold that all lessees may proceed under the MMWA or that Peterson *is* a category two or category three consumer. We merely hold that Peterson alleged sufficient facts in her complaint to survive Volkswagen's motion to dismiss. Peterson has alleged sufficient facts to meet the statutory definition of a category two and category three consumer. On remand, the parties should be accorded the full opportunity to conduct discovery and present motions for summary judgment if the evidence produced during discovery demonstrates there are no disputed issues of fact.