SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| BILL PARROT, | ) Arizona Supreme Court |
| | ) No. CV-05-0104-PR |
| Plaintiff-Appellant, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-CV 04-0121 |
| DAIMLERCHRYSLER CORPORATION, | ) |
| | ) Maricopa County |
| Defendant-Appellee. | ) Superior Court |
| | ) No. CV02-008392 |
| | ) |
| _____ | ) **O P I N I O N** |

Appeal from the Superior Court in Maricopa County
The Honorable Jonathan H. Schwartz, Judge

**AFFIRMED**

Opinion of the Court of Appeals, Division One
210 Ariz. 143, 108 P.3d 922 (App. 2005)

**VACATED**

_____

KROHN & MOSS, LTD.                                          Phoenix
     By   Marshall Meyers
          Ian Pryor
Attorneys for Bill Parrot

BOWMAN AND BROOKE LLP                                        Phoenix
     By   Negatu Molla
          Jennifer L. Haman
Attorneys for DaimlerChrysler Corporation

_____


**R Y A N**, Justice

¶1        In this case, we must determine whether an automobile

lessee can maintain an action under the Magnuson-Moss Warranty Act ("Warranty Act" or "Act"), 15 U.S.C. §§ 2301-2312 (2000), and whether the lessee has a right to pursue remedies under the Arizona Motor Vehicle Warranties Act ("Lemon Law"), Ariz. Rev. Stat. ("A.R.S.") §§ 44-1261 to -1267 (2003 & Supp. 2005). We hold that, under the circumstances of this case, a lessee neither can sue under the Warranty Act nor have remedies under the Lemon Law.

**I**

¶**2** Bill Parrot leased a 2000 Jeep Cherokee from Pitre Chrysler Plymouth Jeep Eagle ("Pitre") in Scottsdale, Arizona. The Jeep came with "Chrysler's standard limited warranty." Simultaneously with executing its lease with Parrot, Pitre assigned the lease to the lender, Chrysler Financial Company, L.L.C. Pitre apparently retained title to the vehicle.[1]

¶**3** Parrot alleges that while he possessed the vehicle, he had to bring it to various dealerships at least thirteen times for repairs including: at least eleven times for suspension/axle defects; four times for alignment defects; three times for a windshield leak; three times for brake defects; and once for an exhaust system defect.

¶**4** Dissatisfied with the repair work done on the Jeep,

---

[1] At oral argument, Parrot claimed for the first time that Pitre sold the Jeep to Chrysler Financial. However, nothing in the record establishes that any such sale occurred.

Parrot filed suit in superior court alleging that DaimlerChrysler had breached its written warranty and seeking remedies under the Warranty Act and the Lemon Law. The parties filed cross motions for summary judgment. The trial court granted DaimlerChrysler's motion for summary judgment.

¶5 Parrot appealed. The court of appeals reversed, concluding that Parrot was a consumer subject to protection under both the Warranty Act and the Lemon Law. *Parrot v. DaimlerChrysler Corp.*, 210 Ariz. 143, 150-51, ¶¶ 30, 33, 39, 108 P.3d 922, 929-30 (App. 2005).

¶6 We granted DaimlerChrysler's petition for review because the applicability of the Warranty Act and the Lemon Law to lessees is an issue of first impression for this Court. We have jurisdiction under Article 6, Section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II

¶7 This matter concerns the interpretation of the Warranty Act and the Lemon Law. Statutory interpretation is an issue of law and is decided de novo. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). "We interpret statutes to give effect to the legislature's intent. When a statute is clear and unambiguous, we apply its plain language" to find the legislature's intent and do "not engage in other means of statutory interpretation."

*Kent K. v. Bobby M.*, 210 Ariz. 279, 283, ¶ 14, 110 P.3d 1013, 1017 (2005) (citing *Aros v. Beneficial Ariz., Inc.*, 194 Ariz. 62, 66, 977 P.2d 784, 788 (1999)).  A statute is clear and unambiguous when it admits of only one meaning.  *Millett v. Frohmiller*, 66 Ariz. 339, 345, 188 P.2d 457, 461 (1948).

¶8     We first examine the Warranty Act and then turn to Arizona's Lemon Law.  Under neither is Parrot entitled to relief.

## III

### A

¶9     In response to complaints "from irate owners of motor vehicles complaining that automobile manufacturers and dealers were not performing in accordance with the warranties on their automobiles," *Motor Vehicle Mfrs. Ass'n of U.S. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990) (quoting H.R. Rep. No. 93-1107 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 7702, 7708), Congress enacted the Warranty Act in 1975.  The purpose of the Warranty Act is "to prevent warranty deception."  Milton R. Schroeder, *Private Actions under the Magnuson-Moss Warranty Act*, 66 Cal. L. Rev. 1, 9 (1978) ("Schroeder").  To further that purpose, the Act requires conspicuous disclosure of the "terms and conditions" of warranties "in simple and readily understood language."  15 U.S.C. § 2302(a).  And, "[t]o enforce its

requirements, the Act permits 'a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract' to sue warrantors for damages and other relief in any court of competent jurisdiction." *DiCintio v. DaimlerChrysler Corp.*, 768 N.E.2d 1121, 1123 (N.Y. 2002) (quoting 15 U.S.C. § 2310(d)(1)). To bring a cause of action under the Warranty Act, a person must be a consumer of a consumer product and have a written warranty, implied warranty, or service contract, as those terms are defined by the Warranty Act.[2]

¶10     The Warranty Act defines "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes."  15 U.S.C. § 2301(1).  The parties agree that the Jeep is a consumer product.  Therefore, the dispositive issue is whether Parrot is a consumer as defined by the Act.

¶11     The Act creates three categories of consumers.  *Id*. § 2301(3).  The first category includes "a buyer . . . of any consumer product," other than for purposes of resale.  *Id*.  The second encompasses "any person to whom [a consumer product] is

---

[2]     Although the Warranty Act also refers to implied warranties and service contracts, because the issue before this Court is whether Parrot has the right to enforce a written warranty, we limit our analysis to written warranties.

transferred during the duration of . . . [a] written warranty." *Id*. The third category includes "any other person who is entitled by the terms of such warranty . . . or under applicable State law to enforce against the warrantor . . . the obligations of the warranty." *Id*.

¶12     Each category requires a qualifying sale - a sale in which a person buys a consumer product for purposes other than resale. The first category necessarily involves a qualifying sale by its own terms, requiring that a consumer be a "*buyer* . . . of any consumer product." *Id*. (emphasis added). The necessity of a qualifying sale for categories two and three consumers arises from the Warranty Act's definition of "written warranty." *DiCintio*, 768 N.E.2d at 1124.

¶13     The Warranty Act defines "written warranty" as:

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer *for purposes other than resale of such product*.

15 U.S.C. § 2301(6) (emphasis added).

¶14      Subsections (A) and (B) each expressly require a sale of a consumer product by a supplier. *Id.* In addition, both subsections are modified by the qualifying phrase at the end of 15 U.S.C. § 2301(6). That qualifying phrase calls for the underlying sale to be to a buyer "for purposes other than resale" and for the written affirmation, promise, or undertaking to be part of the basis of the bargain. *Id*.

¶15      Consequently, the existence of a written warranty, as defined by the Warranty Act, is a requirement for both category two and category three "consumer" status. A person cannot be a category two consumer unless some person purchased the vehicle for purposes other than resale and the written warranty was "part of the basis of the bargain between a supplier and a buyer." *Id.*

¶16      Similarly, a person cannot be a category three consumer unless a qualifying sale has occurred. The category three definition of "consumer" has two parts. Both parts require that a qualifying sale occur - that a person purchased the vehicle for purposes other than resale and that the warranty was "part of the basis of the bargain between a supplier and a buyer." *Id.*

¶17      The first part states that, in addition to meeting the

foregoing requirements, a consumer must be a person "entitled by the terms of *such* warranty . . . to enforce against the warrantor . . . the obligations of the warranty." 15 U.S.C. § 2301(3) (emphasis added). The use of the word "such" to modify "warranty" logically refers to the previous use of "warranty" in the statute. The previous use of "warranty" occurs in category two when it defines a consumer as a person to whom the product is "transferred during the duration of . . . [a] written warranty." *Id.* Thus, the first part of the definition of a category three consumer means any person entitled by the terms of a *written warranty* to enforce the obligations of the warranty against the warrantor. As discussed above, the term "written warranty," as defined in the Warranty Act, is a "written affirmation, promise, or undertaking [that] *becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale* of such product." *Id.* § 2301(6) (emphasis added). Accordingly, to be a category three consumer under the first part of the definition, a qualifying sale as defined by the Warranty Act must have occurred.

¶18　　The second part of category three defines a consumer as "any other person who is entitled . . . under applicable State law to enforce against the warrantor . . . the obligations of *the warranty*." *Id.* § 2301(3) (emphasis added). In this second part, the phrase "the warranty" should not be interpreted

- 8 -

in the generic sense as meaning any warranty. Such an interpretation would be inconsistent with the statutory scheme as a whole.

¶19    We presume that Congress uses terms consistently. *See, e.g.*, *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) (noting that statutory interpretation is "a holistic endeavor"). Other than references to an implied warranty,[3] every other use of the term "warranty" in 15 U.S.C. § 2301(3) is either a direct reference to "written warranty" or a short-hand reference to "written warranty." Thus, a consistent reading of the second part of section 2301(3)'s definition of a category three consumer requires interpreting "warranty" as a written warranty as defined by the Warranty Act.

¶20    We therefore conclude that to be a category three consumer, a written warranty as defined by the Warranty Act must exist. Because a written warranty requires a qualifying sale, to meet the requirements under this category there must be evidence of such a sale.

**B**

¶21    Parrot claims that he is a category two or three

---

[3]    The Act defines "implied warranty" as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). As noted in footnote 2, the issue of an implied warranty is not presented in this case.

consumer with a written warranty governed by the Warranty Act. He is neither because no qualifying sale – a purchase for purposes other than resale – has occurred.

¶22      Parrot conceded at oral argument that Pitre purchased the Jeep from DaimlerChrysler for the purpose of resale.  The only identifiable sale in the record before this Court is to the lessor, Pitre, whose ultimate goal is to resell the vehicle. Consequently, the only sale here was for purposes of resale.

¶23      Even though the language defining a category two consumer

> appears to reach beyond sales of consumer products to include transactions in which a merchant leases goods to consumers or in which the consumer is only a bailee, such a reading is erroneous.  The definition[] of [a] written . . . warrant[y] still require[s] a *sale* between a supplier and a buyer.  Thus, this portion of the definition of "consumer" must be viewed as referring to transferees after an initial sale of the product.  *There must be an initial buyer who buys "for purposes other than resale" of the product.*

Schroeder at 11 (second emphasis added) (footnote omitted). Parrot concedes that there is no such sale here.

¶24      Thus, we hold that because the only sale in this case was for purposes of resale, Parrot does not have a written warranty governed by the Warranty Act.

C

¶25      Parrot relies on several recent cases to support his claim that he is either a category two or three consumer.  We do not find these cases persuasive.  For example, in *Cohen v. AM*

- 10 -

*General Corp.*, the court concluded that "the *purpose* of the transaction . . . was not for resale, but for the lease of the vehicle." 264 F. Supp. 2d 616, 619 (N.D. Ill. 2003). The court based its conclusion on the following factors: the leasing company would not have purchased the vehicle but for the fact that the car dealer had entered into a leasing agreement with the plaintiff; the leasing company did not "intend[] to add the vehicle to its inventory or advertise it for sale to other parties"; and it profited through the lease agreement. *Id*. In *Peterson v. Volkswagen of America, Inc.*, the court concluded that when a lessor purchased a vehicle for purposes of leasing the vehicle instead of reselling it, the lessee came within the purview of the Act as a category three consumer. 697 N.W.2d 61, 71-73, ¶¶ 33-37, 41-42 (Wis. 2005).

¶26 But here, Parrot conceded that Pitre, the dealer-lessor, had purchased the Jeep for resale. Thus, both *Cohen* and *Peterson*, in which the purpose of the purchase of the motor vehicle was found to be for leasing, are inapposite.

¶27 Parrot also relies heavily on opinions that have held that interpreting the Warranty Act as not applying to leases "is inconsistent with the purposes of the [Warranty] Act – to protect the ultimate user of the product." *Szubski v. Mercedes-Benz, U.S.A., L.L.C.*, 796 N.E.2d 81, 88, ¶ 28 (Ct. Com. Pl. Ohio 2003); *see also Cohen*, 264 F. Supp. 2d at 621 (holding that

- 11 -

"[t]his reading . . . best serves Congress' goal of 'better protecting consumers'") (citation omitted); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) (same). Although this interpretation of the Act has a certain attraction, it does not comport with the plain language of the Act. As discussed above, a person must be a consumer as defined under the Warranty Act, which requires that there be a qualifying sale. *See* 15 U.S.C. § 2301(3), (6). In the absence of such a sale, Parrot simply does not qualify as a consumer under the Act.

¶28 Finally, a few courts, including our court of appeals, have concluded that if state law permits enforcement of a written warranty, then the Warranty Act governs that warranty even if the written warranty does not otherwise meet the requirements of the Warranty Act. *See, e.g.*, *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003); *Parrot*, 210 Ariz. at 148-49, ¶¶ 21-27, 108 P.3d at 927-28; *Mesa*, 904 So. 2d at 457; *Dekelaita v. Nissan Motor Corp.*, 799 N.E.2d 367, 372 (Ill. App. Ct. 2003).

¶29 We find the reasoning of these courts flawed in two respects. First, they rely upon an incorrect reading of 15 U.S.C. § 2301(6). Second, they rely upon the mistaken assumption that the use of the term "the warranty" in the second part of category three's definition of "consumer" means that the

Warranty Act governs any warranty enforceable under state law.

**¶30** For instance, in *Parrot*, the court mistakenly limited the qualifying phrase "which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product" to subsection (B) of 15 U.S.C. § 2301(6). *See* 210 Ariz. at 147, ¶ 15, 108 P.3d at 926.[4] Instead, as set forth in paragraphs 13 and 14, above, the qualifying phrase applies to both subsection (A) and (B) of § 2301(6). *See also* 16 C.F.R. § 700.11(b) ("A written warranty must be 'part of the basis of the bargain.' This means that it must be conveyed at the time of sale of the consumer product . . . .").

---

[4] Specifically, the court quoted the definition of a warranty in the following manner:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
>
> any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, *which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.*

*Parrot*, 210 Ariz. at 147, ¶ 15, 108 P.3d at 926 (emphasis added).

¶31        This error led the court to conclude that, to be a category two consumer, one need only have a "written warranty . . . 'made in connection with the sale' of a consumer product by 'a supplier' to 'a buyer.'"  *Parrot*, 210 Ariz. at 147, ¶ 15, 108 P.3d at 926 (citations omitted).  Likewise, the court's conclusion that Parrot is a category three consumer rests in part on its mistaken reading of 15 U.S.C. § 2301(6). *See id*. at 148, ¶¶ 21-22, 108 P.3d at 927.

¶32        In *Dekelaita*, the court concluded that the lessee was a category three consumer because the lessee was entitled to enforce the warranty under state law.  799 N.E.2d at 372.  This conclusion rested on the premise that "the third [category] does not exclusively require that the warranty meet[] the Act's definition if in fact it is enforceable under state law."  *Id*. at 374.

¶33        But *Dekelaita* comes to this conclusion without any discussion of the statute or reference to "warranty" as used in the definition of a category three consumer.  *See id*. at 372. Instead, the court simply assumed that a category three consumer may obtain remedies under the Warranty Act if a warranty is enforceable under state law.  *See id*.  But this is an incorrect reading of the reference to warranty in the definition of a category three consumer.  Under 15 U.S.C. § 2301(6), for the Act to apply, a purchase for purposes other than resale is required.

- 14 -

*Dekelaita* simply does not address these requirements.

¶34    The court in *Dekelaita* nevertheless went on to conclude that a written warranty, as defined by the Warranty Act, existed in that case.  *See id*. at 372-74.  This conclusion, however, relies upon the same mistaken reading of 15 U.S.C. § 2301(6) as was made in *Parrot*.  *See Dekelaita*, 799 N.E.2d at 370.

¶35    Because the court in *Dekelaita* relied on this misreading of 15 U.S.C. § 2301(6), it ignored the issue of whether the sale was for purposes other than resale and whether the written warranty was part of the basis of the bargain between the supplier and the buyer.[5]  *See* 799 N.E.2d at 372-74. *Dekelaita*'s holding that all that is necessary to be a category three consumer is to have some warranty that is enforceable under state law is based upon a mistaken premise.

¶36    In *Voelker*, the court depended upon the holding in *Dekelaita* to conclude that because the lessee could enforce the

---

[5]    The court in *Dekelaita* does note that the question of whether the car was purchased for resale was important in the *DiCintio* opinion.  799 N.E.2d at 375.  But it dismisses *DiCintio*'s reasoning by stating "[t]he problem with that reasoning is that most automobile purchasers buy a car with the ultimate goal of resale . . . .  Under the *DiCintio* court's reasoning, few buyers could ever enforce the Act."  *Id*. (citing *Cohen*, 264 F. Supp. 2d at 620).  Because Parrot has conceded that the purchase by Pitre – the only purchase in the record in this case – was for purposes of resale, we need not today decide whether other purchasers qualify under the terms of the Act.

- 15 -

warranty under state law, the lessee was a category three consumer. 353 F.3d at 524 (citing *Dekelaita*, 799 N.E.2d at 372). Because we do not find *Dekelaita* persuasive precedent for this proposition, we decline to follow *Voelker*.

¶37    We therefore hold that because Pitre purchased the vehicle for purposes of resale, and there is no other qualifying sale on the record before us, Parrot does not qualify as a consumer under the Warranty Act. As a result, he cannot maintain an action against DaimlerChrysler under the Warranty Act.[6]

## IV

¶38    The Warranty Act "apparently was not successful in resolving consumer problems with chronically defective automobiles." *Abrams*, 899 F.2d at 1317. As a result, a number of states enacted so-called lemon laws. *Id.; see also* Joan Vogel, *Squeezing Consumers: Lemon Laws, Consumer Warranties, and a Proposal for Reform*, 1985 Ariz. St. L.J. 589, 592 ("Due to the inadequacy of the UCC and the Magnuson-Moss Warranty Act, thirty seven states have now passed lemon laws to deal with automobile warranty disputes."). Arizona enacted its version of a lemon law in 1984. *See* 1984 Ariz. Sess. Laws, ch. 265, § 1 (codified as amended at A.R.S. §§ 44-1261 to -1265).

---

[6]    This does not mean Parrot has no remedies. DaimlerChrysler acknowledged that Parrot "retains any common law" or other possible remedies.

- 16 -

¶39     The Lemon Law definition of "consumer" parallels the definition in the Warranty Act:

> "Consumer" means the purchaser, other than for purposes of resale, of a motor vehicle, any person to whom the motor vehicle is transferred during the duration of an express warranty applicable to the motor vehicle or any other person entitled by the terms of the warranty to enforce the obligations of the warranty.

A.R.S. § 44-1261(A)(1).  An important difference between the Lemon Law and the Warranty Act is that the Lemon Law does not define the term "warranty."  Accordingly, the requirement that there be a sale for purposes other than resale does not apply to warranties under the Lemon Law.  Thus, although Parrot would not qualify as a category one consumer under the Lemon Law because he did not purchase the Jeep, he may qualify as a category two or three consumer under A.R.S. § 44-1261(A)(1).  However, we need not decide whether Parrot would qualify as a category two or three consumer because of the limited remedies afforded by the Lemon Law.

¶40     The Lemon Law's remedies for the failure of a manufacturer "or its authorized dealers" to correct or repair "any defect or condition which substantially impairs the use . . . of the motor vehicle," are replacing the vehicle "or accept[ing] return of the motor vehicle from the consumer and refund[ing] to the consumer the full purchase price, including all collateral charges, less a reasonable allowance for the

- 17 -

consumer's use of the vehicle."  A.R.S. § 44-1263(A).

¶41     Both remedies assume that the consumer has the right to transfer title to the vehicle back to the manufacturer.  Only the owner of the vehicle or holder of title can transfer title. *See* A.R.S. § 28-2058 (2004).  This record, however, establishes that Pitre is the owner and title holder; at oral argument Parrot conceded that he did not have title in the vehicle.  A person who neither owns a vehicle nor has title to it cannot return the vehicle to the manufacturer, nor is he entitled to have the defective vehicle replaced by another.  Therefore, under the Lemon Law, Parrot has no remedy.

¶42     That the statute's remedies are inapplicable to lessees is implicit in A.R.S. § 44-1263(A), which provides express protection of a "lienholder," requiring that "[t]he manufacturer shall make refunds to the consumer and lienholder, if any, as their interests appear," without providing protection for lessors.

¶43     Our conclusion is bolstered by a 1992 amendment to the section of Arizona's version of the Uniform Commercial Code[7] pertaining to leases.  *See* 1992 Ariz. Sess. Laws, ch. 226, § 4 (codified as amended at A.R.S. §§ 47-2A101 to -2A532 (2005)). In the section governing revocation of acceptance of a lease, lessors and lessees may agree to be bound by the Lemon Law and

---

[7]     A.R.S. §§ 47-1101 to -10102 (2005).

not by the Uniform Commercial Code:

> The lessee and lessor may, by a conspicuous writing contained in the lease or elsewhere, provide that the provisions of this section will not apply to a new motor vehicle which is otherwise subject to the provisions of title 44, chapter 9, article 5 [the Lemon Law]. . . . When the parties have so agreed, then for the purposes of title 44, chapter 9, article 5, the lessee shall be deemed the consumer of the motor vehicle, with the lessor having all the rights of a lienholder in such motor vehicle.

A.R.S. § 47-2A517(F). Subsection F recognizes that although leases may be "otherwise subject" to the Lemon Law, the remedies provided in section 44-1263(A) are, as a practical matter, simply not available to the lessee. As the latter part of subsection F makes clear, for such remedies to be available, the lessee and lessor have to be made the functional equivalents of a consumer and a lienholder. There is no "conspicuous writing" evidencing such an agreement in this case.

¶44        Furthermore, a proponent of the amendment noted that "unlike a buyer, a lessee normally does not have the right to sell or otherwise alienate title to the leased goods, an important reason why it may often be inappropriate to allow the lessee the remedies available under the lemon law." State Bar of Ariz., Corp., Banking and Commercial Loan Section, Comm. on U.C.C. Article 2A, *Report of the Comm. on Article 2A* (Oct. 1, 1991) (on file with Ariz. Legislative Council) (related to H.B. 2421, Fortieth Legislature, Second Regular Sess.) Accordingly,

unless the lessor and lessee have expressly provided in writing to permit the lessee "to 'sell' the vehicle back to the manufacturer or other responsible party or to exercise other remedies under the lemon law," a lessee has no remedy under the Lemon Law. Because Parrot and Pitre did not expressly provide for such a contingency, Parrot's claim under the Lemon Law fails.

**V**

¶45 For the foregoing reasons, we vacate the decision of the court of appeals and affirm the summary judgment entered by the superior court.

           _____

           Michael D. Ryan, Justice

CONCURRING:

_____
Ruth V. McGregor, Chief Justice

_____
Rebecca White Berch, Vice Chief Justice

_____
Andrew D. Hurwitz, Justice

_____
W. Scott Bales, Justice