142 P.3d 712

**Ricky MAGO, Plaintiff/Appellant,**

v.

**MERCEDES–BENZ, U.S.A., INC., Defendant/Appellee.**

No. 1 CA–CV 04–0144.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 7, 2006.

---

Krohn & Moss, Ltd. By Marshall Meyers, Ian Pryor, Phoenix, Attorneys for Plaintiff/Appellant.

Bowman and Brooke, LLP By Negatu Molla, Tracy L. Carlson, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

TIMMER, Presiding Judge.

¶ 1 In the wake of *Parrot v. Daimler-Chrysler Corp.*, 212 Ariz. 255, 130 P.3d 530 (2006), the supreme court vacated our memorandum decision previously filed in this case and remanded for reconsideration. The issue is whether Ricky Mago, a lessee of a Mercedes–Benz E430, is eligible to recover under the Arizona Motor Vehicle Warranties Act ("Lemon Law"), Arizona Revised Statutes ("A.R.S.") sections 44–1261 to –1267 (2003 & Supp.2005), or the Magnuson Moss Warranty Act ("Warranty Act" or "Act"), 15 U.S.C. §§ 2301–2312 (2000), for vehicle defects that substantially impaired its use, value, and safety. For the reasons that follow, we hold that Mago's lessee status prevents him from seeking remedies under the Lemon Law but does not foreclose his claim under the Warranty Act.

## FACTS AND PROCEDURAL HISTORY[1]

¶ 2 On May 23, 2001, Mago leased a new Mercedes–Benz E430 ("E430") from Phoenix Motor Company ("Dealer"), which simultaneously sold the vehicle and assigned the lease to Mercedes–Benz Credit Corporation ("Lessor"). The E430 was manufactured by Mercedes–Benz U.S.A. Inc. ("M–B USA").

¶ 3 M–B USA issued Dealer a written warranty that covered the E430 for defects for four years or fifty thousand miles. The warranty rights were assigned to Mago as part of the lease agreement. Shortly after Mago leased the E430, the vehicle experienced numerous problems. Mago took the E430 to an authorized Mercedes–Benz Center for repair at least eight times between May 2001 and July 2002, but the defects remained uncorrected. Subsequently, in early July 2002, Mago revoked his acceptance of the E430, but M–B USA refused the revocation and declined to pay damages.

¶ 4 Later in July, Mago filed a complaint in superior court seeking remedies under the Lemon Law and the Warranty Act, both of which provide remedies to a consumer when a motor vehicle warrantor fails to honor its obligations. *Parrot*, 212 Ariz. at 257, 261–62, ¶¶ 9–10, 38, 42, 130 P.3d at 532, 536–37. M–B USA moved for summary judgment in March 2003, arguing that the statutes do not apply to leased vehicles.

¶ 5 In September 2003, the trial court granted M–B USA's motion, reasoning that Mago, as a lessee, is not a "consumer" as used in either the Lemon Law or the Warranty Act. The court stated that although neither law extensively defined the term "consumer," the language in the statutes implied that "a consumer is a person who buys a product."

¶ 6 We reversed the trial court's grant of summary judgment, basing our analysis and conclusion on this court's then-recent decision in *Parrot v. DaimlerChrysler Corp.*, 210 Ariz. 143, 108 P.3d 922 (App.2005), which held that a lessee may seek remedies under the Lemon Law and the Warranty Act because a lessee fits the definitions of "consumer" under both statutes. 210 Ariz. at 147–48, 150, ¶¶ 18–19, 33–36, 108 P.3d at 926–27, 929. The supreme court, however, vacated that decision and then remanded the present case to this court for reconsideration in light of its holding in *Parrot*, "including [determining] . . . whether a lessee has remedies under the [Warranty Act], when there is a claim or allegation that there has been a sale of a vehicle by a supplier to a lessor."

## ANALYSIS[2]

### I.

¶ 7 The plaintiff in *Parrot v. Daimler-Chrysler Corp.* leased a Jeep from a dealer, who then assigned the lease to a lender but retained title to the vehicle. 212 Ariz. at 256, ¶ 2, 130 P.3d at 531. The manufacturer's

---

1. We review the evidence in the light most favorable to Mago as the party opposing summary judgment. *Myers v. City of Tempe*, 212 Ariz. 128, 130, ¶ 7, 128 P.3d 751, 753 (2006).

2. By separate unpublished decision filed this date, we address an additional issue raised on

appeal that is not relevant to our analysis in this opinion and does not meet the standards of publication set forth in Arizona Rule of Civil Appellate Procedure 28(b). *Fenn v. Fenn*, 174 Ariz. 84, 85, 847 P.2d 129, 130 (App.1993).

written warranty accompanied the Jeep. *Id.* After experiencing numerous problems with the Jeep, the plaintiff filed suit against the manufacturer alleging breach of warranty and seeking remedies under the Lemon Law and the Warranty Act. *Id.* at ¶¶ 3–4. The trial court granted summary judgment for the manufacturer, the court of appeals reversed, and the supreme court granted the subsequently filed petition for review. *Id.* at ¶¶ 4–6. The issue before the court was whether the plaintiff was a "consumer" under either the Lemon Law or the Warranty Act. *Id.* at ¶ 1. Resolution of this issue turned on the interpretation and application of each statutory scheme.

¶ 8 In order to be a "consumer" under the Lemon Law, one must qualify under at least one of the following three categories of consumers: (1) a "purchaser, other than for purposes of resale, of a motor vehicle," (2) "any person to whom the motor vehicle is transferred during the duration of an express warranty applicable to the motor vehicle," or (3) "any other person entitled by the terms of the warranty to enforce the obligations of the warranty." A.R.S. § 44–1261(A)(1). Although the plaintiff clearly could not qualify under category one due to his lessee status, the *Parrot* court noted that he may qualify under the latter two categories. 212 Ariz. at 261, ¶ 39, 130 P.3d at 536. The court did not decide that issue, however, because it concluded that the remedies afforded by the Lemon Law precluded recovery by a vehicle lessee. *Id.*

¶ 9 The Lemon Law provides that if a manufacturer or its authorized dealer fails to correct or repair a vehicle, thereby substantially impairing its use, the manufacturer must either replace the vehicle or accept return of the defective vehicle and refund the purchase price plus collateral charges to the consumer, less a reasonable use allowance. *Id.* at 261–62, ¶ 40, 130 P.3d at 536–37. Because "[b]oth remedies assume that the consumer has the right to transfer title to the vehicle back to the manufacturer," and "[o]nly the owner of the vehicle or holder of title can transfer title," the court held that the plaintiff, as lessee, had no remedies under the Lemon Law, regardless of his status

as a category two or three consumer. *Id.* at 262, ¶ 41, 130 P.3d at 537.

¶ 10 The Warranty Act's remedies are not limited to vehicle replacement or refund. 15 U.S.C. § 2310(d). Thus, the *Parrot* court examined the plaintiff's status as a consumer under that scheme. The Act's definition of "consumer" is akin to the Lemon Law definition. *Id.* at 261, ¶ 39, 130 P.3d at 536. To be a "consumer" under the Act, one must qualify under at least one of the following three categories: (1) " 'a buyer ... of any consumer product,' other than for purposes of resale," (2) " 'any person to whom [a consumer product] is transferred during the duration of ... [a] written warranty,' " and (3) " 'any other person who is entitled by the terms of such warranty ... or under applicable State law to enforce against the warrantor ... the obligations of the warranty.' " *Id.* at 257, ¶ 11, 130 P.3d at 532, citing 15 U.S.C. § 2301(3). Unlike the Lemon Law, however, the Act defines "written warranty" in a manner that compelled the supreme court to conclude that each consumer category requires (1) a sale of a consumer product to a buyer for purposes other than resale, and (2) that the written warranty formed part of the basis for the bargain between the supplier and buyer (collectively, a "qualifying sale"). *Id.* at 257, 258, ¶¶ 12, 14–15, 130 P.3d at 532, 533.

¶ 11 Although the plaintiff in *Parrot* claimed he was a category two or three consumer, the court concluded that he was neither because no qualifying sale had occurred. *Id.* at 259, ¶ 21, 130 P.3d at 534. Because the plaintiff conceded that the dealer purchased the Jeep for the purpose of resale, and no other sale had been consummated, no qualifying sale occurred, and plaintiff did not qualify as a consumer under the Act. *Id.* at ¶¶ 22–24.

■ ¶ 12 The decision in *Parrot* compels a conclusion that Mago does not possess any remedies under the Lemon Law. As a lessee, he does not hold title to the E430 and therefore cannot transfer title to M–B USA to obtain a replacement vehicle or refund. Consequently, the trial court properly entered summary judgment against Mago on his Lemon Law claim.

¶ 13 *Parrot* does not dictate resolution of the issues raised under the Warranty Act. Unlike the situation in *Parrot,* the record here reflects a second sale—one from Dealer to Lessor. Thus, we must decide whether that sale can constitute a qualifying sale under the Warranty Act. If so, we must then decide whether Mago has produced sufficient evidence to otherwise demonstrate that he is a "consumer" as defined by the Act, thereby making summary judgment on this claim inappropriate.

## II.

### A.

■ ¶ 14 M–B USA argues that the definition of "written warranty" under the Warranty Act makes clear that a qualifying sale occurs only when a consumer product is sold to the consumer seeking remedies under the Act. Because the E430 was never sold to Mago, M–B USA maintains that a qualifying sale never occurred, and Mago has no remedies under the Act. Mago counters that the Act does not require a sale to the consumer as long as another qualifying sale was consummated within the sequence of events that placed the product in the consumer's possession. According to Mago, Dealer's sale of the E430 to Lessor constituted such a sale.

■ ¶ 15 The Act defines a written warranty, in pertinent part, as follows:

(A) any ... written promise made in connection with the sale of a consumer product by a supplier to a buyer ... or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product ...,

. . . .

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6). We interpret § 2301(6) to give effect to Congress' intent. *Parrot,* 212 Ariz. at 257, ¶ 7, 130 P.3d at 532. To do so, we first look to the language of the statute and will ascribe plain meaning to the

terms unless they are ambiguous. *Rineer v. Leonardo,* 194 Ariz. 45, 46, ¶ 7, 977 P.2d 767, 768 (1999). If so, we will consider secondary principles of construction to discern Congressional intent. *See Fuentes v. Fuentes,* 209 Ariz. 51, 55, ¶ 12, 97 P.3d 876, 880 (App.2004).

¶ 16 We agree with Mago's interpretation of § 2301(6) for several reasons. First, the plain language of § 2301(6) does not limit qualifying sales only to those between a supplier and a buyer who ultimately seeks remedies under the Act. Section 2301(6) only requires that a written warranty be issued "in connection with" a sale.

¶ 17 Second, § 2301(6) refers to a sale to a "buyer" rather than to a "consumer," who is entitled to seek relief under the Act. *See* 15 U.S.C. § 2310(d)(1). If Congress intended to limit qualifying sales to those between suppliers and persons entitled to relief under the Act, it is reasonable to conclude that it would have referred to a "consumer" rather than to a "buyer." *City of Phoenix v. Superior Court,* 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984) (noting court should interpret statute to give it sensible meaning).

■ ¶ 18 Third, § 2301(6) necessarily refers to a single sale, thereby further illuminating Congress' intent that a qualifying sale merely occur within the sequence of events leading to placement of the product in the consumer's possession. Section 2301(6) requires that the written affirmation, promise, or undertaking be "made in connection with the sale." A written warranty is not re-made in connection with future sales of the product, but remains in place for the duration specified in the document and travels with the product. *See Ryan v. Am. Honda Motor Corp.,* 376 N.J.Super. 185, 869 A.2d 945, 951 (App.Div.2005) (stating warranties attach to product), *aff'd,* 186 N.J. 431, 896 A.2d 454 (2006). Consequently, as long as the warranty at issue was made in connection with a single sale and formed a part of the basis of the bargain between a supplier and a buyer for purposes other than resale, a qualifying sale occurred.

¶ 19 Fourth, the definition of "consumer" supports a conclusion that Congress did not intend to limit a qualifying sale to that be-

tween a supplier and a consumer seeking relief under the Act. *Goulder v. Ariz. Dep't of Transp.,* 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993) ("Statutes relating to the same subject matter should be read *in pari materia* to determine legislative intent and to maintain harmony."), *aff'd,* 179 Ariz. 181, 877 P.2d 280 (1994). Category one consumers are defined as buyers of a consumer product while categories two and three respectively, apply to transferees of a product and other persons entitled by the warranty or applicable state law to enforce the warranty. 15 U.S.C. § 2301(3). If a qualified sale is limited to a transaction between a supplier and a consumer seeking remedies under the Act, categories two and three would be largely superfluous. *See Herman v. City of Tucson,* 197 Ariz. 430, 434, ¶ 14, 4 P.3d 973, 977 (App.1999) (quoting *Walker v. City of Scottsdale,* 163 Ariz. 206, 210, 786 P.2d 1057, 1061 (App.1989)) (noting court avoids interpreting statute "so as to render any of its language mere 'surplusage,' [and instead] give meaning to 'each word, phrase, clause, and sentence ... so that no part of the statute will be void, inert, redundant, or trivial.' "). Specifically, any transferees or other persons entitled to enforce a warranty who are also buyers would necessarily fall within category one.

¶ 20 Finally, Mago's interpretation of what constitutes a qualifying sale better advances the purpose of the Warranty Act than the more restrictive view urged by M–B USA. *J.L.F. v. Ariz. Health Care Cost Containment Sys.,* 208 Ariz. 159, 162, ¶ 15, 91 P.3d 1002, 1005 (App.2004) (noting court considers purpose of statute to divine intent). The purpose of the Act is to prevent warranty deception, thereby protecting the end-user of the product. *Parrot,* 212 Ariz. at 257, ¶ 9, 130 P.3d at 532; *Szubski v. Mercedes–Benz, U.S.A., L.L.C.,* 124 Ohio Misc.2d 82, 796 N.E.2d 81, 88, ¶ 28 (Ct.Com.Pl.2003).[3] By reading § 2301(6) as requiring a qualifying sale anywhere within the sequence of events that place the product in the consumer's possession, the Act applies to a broader range of consumers who might suffer from warranty deception.

¶ 21 In sum, we decide that a qualifying sale must only occur sometime within the sequence of events that ultimately places the consumer product with the consumer.[4] Mago produced evidence that the sale from Dealer to Lessor led to his lease of the E430.[5] Consequently, Mago is not precluded from seeking relief under the Warranty Act merely because he was not the buyer in a qualifying sale.

3. The *Parrot* court held that the consumer-protection purpose of the Act could not overcome the lessee's failure to fulfill the Act's qualifying sale requirement. 212 Ariz. at 259–60, ¶ 27, 130 P.3d at 534–35. This holding, however, does not preclude consideration of the Act's purpose in interpreting what constitutes a qualifying sale.

4. Courts in other jurisdictions have reached the same conclusion. *See Cohen v. AM General Corp.,* 264 F.Supp.2d 616, 619 (N.D.Ill.2003); *Mesa v. BMW of N. Am.,* 904 So.2d 450, 457 (Fla.Dist.Ct.App.2005); *O'Connor v. BMW of N. Am., LLC,* 905 So.2d 235, 240 (Fla.Dist.Ct.App. 2005); *Mangold v. Nissan N. Am., Inc.,* 347 Ill. App.3d 1008, 284 Ill.Dec. 129, 809 N.E.2d 251, 254–55 (2004); *Dekelaita v. Nissan Motor Corp.,* 343 Ill.App.3d 801, 278 Ill.Dec. 649, 799 N.E.2d 367, 373 (2003); *Szubski,* 796 N.E.2d at 88, ¶ 28; *Peterson v. Volkswagen of Am., Inc.,* 281 Wis.2d 39, 697 N.W.2d 61, 69, ¶ 25 (2005).

We are not persuaded by the cases cited by M–B USA to reach the opposite conclusion. These cases either involved no sales prior to the leases at issue or did not resolve whether a prior sale

constituted a qualifying sale because the lessees did not otherwise meet the criteria of a consumer. *See D.L. Lee & Sons, Inc. v. ADT Sec. Sys.,* 916 F.Supp. 1571 (S.D.Ga.1995), *aff'd* 77 F.3d 498 (11th Cir.1996); *Sellers v. Frank Griffin AMC Jeep, Inc.,* 526 So.2d 147 (Fla.Dist.Ct.App.1988); *Corral v. Rollins Protective Servs.,* 240 Kan. 678, 732 P.2d 1260 (1987); *DiCintio v. DaimlerChrysler Corp.,* 97 N.Y.2d 463, 742 N.Y.S.2d 182, 768 N.E.2d 1121 (2002); *Alpiser v. Eagle Pontiac GMC–Isuzu, Inc.,* 97 N.C.App. 610, 389 S.E.2d 293 (1990).

5. The lease agreement at issue, which is written on Lessor's form, states that Dealer is the original lessor. By execution of the lease, however, Dealer simultaneously assigned the lease to Lessor. Moreover, evidence produced with the summary judgment papers reflects that Dealer only leased the vehicle to Mago because Lessor had already agreed to buy the E430 and assume the role of Mago's lessor. For purposes of withstanding summary judgment, this evidence sufficiently demonstrates that the sale consummated between Dealer and Lessor led to Mago's possession of the vehicle.

**B.**

¶ 22 We next consider whether Dealer sold the E430 to Lessor "for purposes other than resale." 15 U.S.C. § 2301(6). Mago argues that Lessor's purpose in purchasing the vehicle was to lease it to Mago, thereby complying with § 2301(6). M–B USA counters that a lessor who purchases a vehicle to lease presumably intends to eventually resell the vehicle and therefore purchases for purposes of resale.

¶ 23 We decide that a vehicle lessor can qualify as a buyer "for purposes other than resale." First, the plain language of § 2301(6) does not require that a buyer purchase the consumer product without a future intent to resell the product. Rather, § 2301(6) requires only that the buyer have purposes for purchasing the product other than resale. A buyer who purchases a vehicle for the purpose of leasing it possesses such a purpose.

¶ 24 Second, M–B USA's view of § 2301(6) would lead to an absurd result. *State v. Medrano–Barraza*, 190 Ariz. 472, 474, 949 P.2d 561, 563 (App.1997) ("We presume the framers of the statute did not intend an absurd result and our construction must avoid such a consequence."). Presumably, most consumers who purchase a vehicle intend to resell it after a period of use. *See Cohen*, 264 F.Supp.2d at 620 ("Certainly, many customers plan on selling or trading in a vehicle after years of use."). Thus, under M–B USA's construction of § 2301(6), such consumers would purchase their vehicles for a purpose of resale, thereby disqualifying them from seeking relief under the Warranty Act. Because that construction would certainly eliminate the vast majority of vehicle consumers from the Act, we cannot conclude that Congress intended this result.

¶ 25 In sum, we conclude that a buyer who purchases a vehicle for the purpose of

leasing it to a third party possesses a purpose "other than resale" even if it plans to eventually resell the vehicle.[6] Unlike the plaintiff in *Parrot*, who conceded that the dealer purchased the Jeep for the purpose of resale, Mago produced evidence that Lessor purchased the E430 for the purposes of leasing it to Mago. Consequently, sufficient evidence exists that Lessor purchased the vehicle for a purpose "other than resale."

**C.**

¶ 26 For all these reasons, we conclude that Mago produced sufficient evidence that a qualifying sale occurred between Dealer and Lessor so that summary judgment on this issue was inappropriate.[7] We therefore address whether Mago has produced evidence that he otherwise qualifies as a "consumer" under the Warranty Act.

**III.**

¶ 27 Mago argues that he qualifies as a "consumer" under category two of the Warranty Act. A category two consumer is one who "is transferred [a consumer product] during the duration of ... [a] written warranty." 15 U.S.C. § 2301(3). Mago asserts that he qualifies under this provision as Lessor transferred the E430 to him through the lease during the applicability of the written warranty. M–B USA counters that Mago cannot qualify under category two because Lessor never transferred title to the E430 to Mago but merely transferred possession of the vehicle. M–B USA alternatively argues that Mago is not a category two consumer because M–B USA's warranty was not in effect at the time of the lease.

**A.**

¶ 28 We first decide the meaning of "transfer" in category two of § 2301(3), which the

---

6. Courts from other jurisdictions are split on this issue. For cases agreeing with our view, see *Cohen*, 264 F.Supp.2d at 619; *Najran Co. v. Fleetwood Enterprises, Inc.*, 659 F.Supp. 1081, 1100 (S.D.Ga.1986); and *Ryan*, 869 A.2d at 951. For cases reaching the opposite conclusion, see *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 523 (7th Cir.2003); *DiCintio*, 742 N.Y.S.2d 182, 768 N.E.2d at 1127.

7. The parties do not address whether M–B USA's warranty formed part of the basis of the bargain between Dealer and Lessor, which Mago must prove to establish the existence of a qualifying sale. *Parrot*, 212 Ariz. at 257, 258, ¶¶ 12, 14–15, 130 P.3d at 532, 533. Thus, we likewise do not address the issue.

supreme court in *Parrot* had no need to address. The Warranty Act does not define the word "transfer," so we look to the plain meaning of the word as defined by widely accepted dictionaries. *State v. Wise*, 137 Ariz. 468, 470 n. 3, 671 P.2d 909, 911 n. 3 (1983) (explaining courts may reference dictionaries to glean ordinary meaning of words). Black's defines "transfer," in pertinent part, as "[a]ny mode of disposing of or parting with an asset or an interest in an asset, including ... lease ... [,]" and "to change over the possession or control of" something. Black's Law Dictionary 1503–04 (7th ed.2004). Similarly, Webster's defines "transfer," again in pertinent part, as "[t]o convey or make over the possession or legal title of (e.g., property) to another." Webster's II New College Dictionary 1170 (2001). Thus, under the plain meaning of the word "transfer," an asset transfer does not require a change in asset ownership but merely a change in possession and control.

¶ 29 We do not discern any language in § 2301(3) indicating that Congress intended the word "transfer" to have anything other than its ordinary meaning, which includes a transfer of possession and control through a lease. Thus, we need not engage secondary principles of statutory construction to determine Congress' intent. *See Fuentes*, 209 Ariz. at 55, ¶ 12, 97 P.3d at 880 (noting court only uses secondary rules of construction when language unclear).

¶ 30 We hold that a "transfer" under consumer category two in 15 U.S.C. § 2301(3) includes the transfer of possession and control of an asset through a lease. Other courts have reached the same conclusion. *See Dekelaita*, 278 Ill.Dec. 649, 799 N.E.2d at 371; *Mangold*, 284 Ill.Dec. 129, 809 N.E.2d at 253; *Peterson*, 697 N.W.2d at 70, ¶ 28; *but see DiCintio*, 742 N.Y.S.2d 182, 768 N.E.2d at 1124. Because Mago produced evidence that he received possession and control of the E430 through his lease with Lessor, summary judgment on this issue was inappropriate.

### B.

¶ 31 We next decide whether Mago produced sufficient evidence that Lessor transferred the E430 to him during the applicability of the written warranty. M–B USA argues that Mago failed to demonstrate that the vehicle was transferred during the applicability of the warranty because no evidence shows that a sale of the vehicle had occurred at the time of transfer, thereby activating the warranty. We are not persuaded.

¶ 32 First, under the terms of M–B USA's warranty, a sale is not needed to activate the warranty. Rather, coverage commenced at the date of delivery of the vehicle or when put into service. The record reflects that Dealer drove the E430 for sixty miles before Mago executed the lease, thereby placing the E430 "into service" and activating the warranty. *See Szubski*, 796 N.E.2d at 82, 88, ¶¶ 4, 28 (concluding vehicle driven seventeen miles at time lessor purchased it was covered by warranty).

¶ 33 Second, even assuming that a sale was necessary to activate the warranty, evidence in the record shows that Dealer had sold the E430 to Lessor at the time of the lease. According to Mago's affidavit, based on his agreement to lease the E430, the Lessor purchased the vehicle in order to lease it to him. Additionally, Dealer's finance manager testified at his deposition that Dealer does not lease cars directly to customers and that, generally, a lessor agrees to purchase the vehicle at the same time the lessee agrees to lease it.

¶ 34 Third, we agree with the Illinois Court of Appeals that it would be "hypertechnical and imprecise" to conclude that a manufacturer's warranty did not go into effect at the time of a lease merely because the lender simultaneously purchased the vehicle. *Dekelaita*, 278 Ill.Dec. 649, 799 N.E.2d at 371 n. 3. This is because "a warranty attaches to those consumer products that the supplier makes 'indirectly' available to consumers. The timing of the sale or transfer of the product, then, cannot be so determinative." *Id.; see also Ryan*, 869 A.2d at 951 ("The warranties by the supplier attach to the product, not the transferee, and are therefore in existence when the lessee takes possession under the lease.").

¶ 35 For these reasons, we conclude that Mago sufficiently demonstrated that Lessor transferred the E430 to him during the applicability of the written warranty, thereby satisfying the criteria for consumer category two. Consequently, M–B USA was not entitled to summary judgment on this basis.

## IV.

¶ 36 Mago also argues that he fits within consumer category three because he was "entitled by the terms of [the] warranty ... to enforce against the warrantor ... the obligations of the warranty." 15 U.S.C. § 2301(3). As M–B USA points out, however, Mago provides no legal support for this contention. We therefore decline to address it. *Barlage v. Valentine,* 210 Ariz. 270, 277 n. 8, ¶ 28, 110 P.3d 371, 378 n. 8 (App.2005).

## CONCLUSION

¶ 37 For the foregoing reasons, and those set forth in the memorandum decision filed this date, we affirm that portion of the summary judgment in favor of M–B USA on Mago's Lemon Law claim. We reverse that portion of the summary judgment, however, in favor of M–B USA on Mago's Warranty Act claim and remand for further proceedings.

CONCURRING: LAWRENCE F. WINTHROP, Judge and DANIEL A. BARKER, Judge.